Mr. Justice Clavton
delivered the opinion of the court.
This was an indictment for the forgery of certain instruments, termed auditor’s warrants, purporting to have been issued by the state of Mississippi.
The bill of indictment was found in the county of Hindes, but the venue was changed to Warásw^where a trial was had, *495 which terminated in the conviction of the prisoner. Various errors have been assigned, and many grounds taken to reverse the judgment, but we do not deem it necessary to notice them all.
It was urged, in argument, with great zeal and earnestness, that the auditor’s warrants of this state, are bills of credit emitted by the state, that they thus come within the prohibition of the constitution of the United States, that they are void, and that it is no crime to counterfeit them.
To determine this point, it is necessary to ascertain what is the precise meaning of the term “ bill of credit.” There is no better means of doing this, than the adoption of the definition, or rather description of a bill of credit, given by the supreme court of the United States, in the case of Craig et al. v. The State of Missouri, 4 Peters, 431. That court says, “In its enlarged, and perhaps its literal sense, the term bill of credit may comprehend any instrument by which a state engages to pay money at a future day; thus including a certificate given for money borrowed. But the language of the constitution itself, and the mischief to be prevented, which we know from the history of our country, equally limit the interpretation of the terms. The word emit is never employed in describing those contracts by which a state binds itself to pay money at a future day for services actually received, or for money borrowed for present use; nor are instruments executed for.such purposes, in common language, denominated bills of credit. To emit bills of credit conveys to the mind the idea of issuing paper intended to circulate through the community for its ordinary purposes as money, which paper is redeemable at a future day. This is the sense in which the terms have been always understood.”
Again, in the same opinion, the court says, “ The term has acquired an appropriate meaning; and bills of credit signify a paper medium, intended to circulate between individuals, and between government and individuals, for the ordinary purposes of society.” In the farther progress of the opinion, the term seems to be regarded as synonymous with paper money issued by a state.
*496 The law of this state which authorizes the issuance of audit- or’s warrants, is in these words: “ It shall be the duty of the 'auditor of public accounts, to examine, settle, and audit all accounts, claims or demands whatsoever, against the state, arising under any act or resolution of the legislature, and to grant to every claimant authorized to receive the same, a warrant on the state treasury. H. & H. 270. Upon this warrant or certificate of the auditor, the treasurer is authorized to make payment, and in no other way.
A comparison of this law of our state with the definition of a bill of credit, above given, satisfies us entirely, that an auditor’s warrant, issued according to the law, is not a bill of credit, within the prohibited sense of the term. It is not issued to form a circulating medium for the community, nor to operate as a substitute for paper money. That they have been' sometimes so used by the.individual holders, cannot alter their legal effect. They are invariably an acknowledgment of indebtedness for services actually rendered, and to.say that they are repugnant to the constitution, and void, would deprive the state of an important means which it has adopted, to prevent frauds and impositions upon the treasury. That the law has not fully answered this end, tends only to prove the imperfection of all human legislation, when directed against fraud.
It was also urged, as error, upon this branch of the case, that the court erred in rejecting tlie testimony which was proposed to be introduced, in order to show that at the time the warrant was issued there was no money in the treasury to take it up; that warrants were not then redeemed, that they were under par, but circulated from hand to hand, as money, and thus to show that they were bills of credit. It is said by counsel, that the issuing of bills of credit is a question of intent, and that evidence was admissible to show the intent. It may be conceded that the intent is an essential point of inquiry in this case, and yet it will not follow, that the.evidence offered was admissible to show the intent. The intent which must stamp the character of this instrument, is that of the legislature which' enacted the law ; not of the officers who were to execute it, or *497 of the persons who received the warrants. The legislative intent can be deduced from the legislative acts alone. In .construing statutes, courts may look to the history and condition of the country as circumstances from which to gather the intention. Testimony to explain the motives which operated upon the law-makers, or to point out the objects they had in view, is wholly inadmissible. It would take from the statute law every semblance of certainty, and make its character depend upon the varying and conflicting statements of witnesses. We think, therefore, the evidence was properly excluded.
The next point we shall notice, likewise grows out of the exclusion of testimony in the court below. There was no direct evidence, on the part of the prosecution, of the guilt of the prisoner. In other words, no one had ever seen him execute any one of the instruments, nor had any of them been seen in his possession, nor was there any proof that he had ever uttered or passed one of them. The evidence in regard to the signature upon the warrants was of a conflicting character; a part of the witnesses believed that the signatures were in the handwriting of the prisoner, and others expressed an opposite belief. It was also in evidence, that the prisoner was a clerk in the auditor’s office, that he had the official custody of the books of the office, including the register, in which a description of all the warrants which were issued, was inserted; that he had free access to them at all times, and that the warrants described in the indictment, corresponded in all material respects, with the description of the genuine warrants in the register. The counsel for the prisoner then proposed to prove, in order to rebut the presumption of his guilt, that the register was not always, or generally, in the strict custody or keeping of the prisoner, but usually to be found negligently thrown about the office, sometimes in one place, sometimes in another, and accessible to all who might casually enter the office; and that there were numerous occasions when the auditor’s office was open for a considerable time, under the care of a single servant. This evidence was objected to by the counsel for the state, and excluded. Its admissibility depends solely upon *498 the point, whether it is to be regarded as rebutting testimony or not.
There was no positive evidence, according to the bill of exceptions, of the prisoner’s guilt. The testimony, as to his handwriting, was contradictory. Had the prosecuting attorney submitted the case upon that testimony, this question could nor have arisen. But to strengthen the case for the state, he proved the opportunities of the prisoner to commit the crime, and the facility of doing so with probable impunity and exemption from .detection. This was rio more than presumptive testimony. To rebut the presumption of guilt thence' arising, the prisoner offered to prove that similar opportunities were presented to others. This offer was rejected.
In this we think the court erred. The circumstances thus proven against the prisoner were calculated to have weight against him, and it would be but just and proper to hear the rebutting proof. We cannot tell what influence they had with the jury. If the state proved even more than was necessary to produce conviction, still if part of the testimony were illegal, the judgment must be reversed. If the presumptive proof last introduced were wholly unnecessary to the prosecution, it cannot deprive the defendant of his right to offer rebutting testimony. For this error the judgment will be reversed, and a new trial granted.
As the result is thus in favor of the prisoner, we shall not consider the exceptions to other portions of the proceedings.
, Judgment reversed, new trial granted, and prisoner remanded.