# 12468

## TALLEVAST v. KAMINSKI *ET AL.*

### (143 S. E., 796)

1. INJUNCTION—ALLEGATIONS ON INFORMATION AND BELIEF WILL NOT WARRANT INTERLOCUTORY INJUNCTION.—An interlocutory injunction will not be granted, where allegations of complaint are made on information and belief.

2. INJUNCTION—ALLEGATION OF IRREPARABLE INJURY OR DAMAGE IS NECESSARY TO GRANT OF INTERLOCUTORY INJUNCTION.—An interlocutory injunction will not be granted in absence of allegation that plaintiff will suffer irreparable injury or damage.

3. JUDGMENT—LITIGANTS CANNOT BY SUCCESSIVE APPLICATIONS RAISE QUESTIONS ALREADY ADVERSELY DECIDED.—It is fundamental that litigants ·will not be permitted by successive applications to the Court to raise questions which have already been decided against them.

4. ACTION—MOVING PARTY MUST SUBMIT ALL FACTS AND CIRCUMSTANCES IN FIRST INSTANCE.—Public policy requires that a moving party submit to the Court in the first instance all the facts and circumstances upon which he relies, and not hold back some of such facts for the purpose of renewing his application if his first attempt is unsuccessful.

5. INJUNCTION—SECOND APPLICATION FOR INTERLOCUTORY RELIEF MUST BE BASED ON FACTS NOT KNOWN NOR REASONABLY ASCERTAINABLE AT TIME OF ·FIRST· APPLICATION.—Where interlocutory relief has been dissolved or refused, a second application for such relief must be founded on facts other than those set forth in the original application, and such new facts must not have been known to or reasonably ascertainable by moving party at time of first application.

6. INJUNCTION—PLAINTIFF IN SUIT TO ENJOIN BORROWING AND EXPENDITURE OF MONEY BY COUNTY OFFICERS HELD NOT ENTITLED TO INTERLOCUTORY INJUNCTION ON SECOND APPLICATION THEREFOR.—Plaintiff in suit to enjoin county officials from borrowing and expending money for particular improvement *held* not entitled to interlocutory injunction on second application therefor, where amended complaint filed after denial of first application did not differ from the original complaint, except that it disclosed the

NOTE: On the general rule as to sufficiency of allegations of irreparable injury in suits for injunctions, see annotations in 32 A. L. R., 516; 14 R. C. L., 332; 3 R. C. L. Supp., 213; 5 R. C. L. Supp., 759; 6 R. C. L. Supp., 812.

Intention of legislators as primary consideration in construction of statutes, 25 R. C. L., 1037, *et seq.;* 3 R. C. L. Supp., 1439.

sources of knowledge and the grounds of belief on which the allegations of the original complaint were based.

7. INJUNCTION—PLAINTIFF HELD NOT ENTITLED TO INTERLOCUTORY INJUNCTION IN ACTION TO ENJOIN BORROWING AND EXPENDITURE OF FUNDS BY COUNTY OFFICIALS.—Plaintiff in action to enjoin county officials' borrowing and expending money for ferry project pursuant to Enabling Statutes *held* not entitled to interlocutory injunction irrespective of previous order denying same relief.

8. STATUTES—ACT MUST BE READ IN LIGHT OF ALL COGNATE LEGISLATION, BUT VIEWS OF INDIVIDUAL LEGISLATORS CANNOT BE CONSIDERED AFFECTING PURPOSE OR SCOPE.—Statute must be read in light of all cognate legislation, but views of individual members of the Legislature as to the purpose and scope of the Act cannot be considered; the Court being bound by the language used and reasonable interpretation thereof.

9. FERRIES—COUNTY COMMISSIONERS CAN INSTALL FERRY ROUTES AND BUILD NECESSARY ABUTMENTS, WHARVES, AND CONNECTING ROADS INDEPENDENTLY OF STATUTE.—County Commissioners have power to install ferry routes and build necessary abutments, wharves, and connecting roads independent of statute.

10. STATUTES—EVEN THOUGH STATUTE IS AMBIGUOUS AND UNCERTAIN, RESORT CANNOT BE HAD TO OPINIONS OF LEGISLATORS OR OTHERS CONCERNED FOR PURPOSE OF ASCERTAINING LEGISLATIVE INTENT.—Even where statutes are ambiguous or uncertain, resort cannot be had to the opinions of legislators or others concerned in the enactment for the purpose of ascertaining the intent of the Legislature.

11. INJUNCTION—VERIFICATION OF BILL FOR INJUNCTION, MANY ALLEGATIONS OF WHICH WERE BASED ON INFORMATION AND BELIEF HELD INSUFFICIENT.—Where many material allegations of bill for injunction are made on information and belief, verification of bill stating that the sources of such information are the records of County Commissioners, admissions by defendants, and sworn statements of others, *held* insufficient for failure to designate records referred to, the admissions relied upon, or the makers of the sworn statements.

12. ACTION—BILL TO ENJOIN EXPENDITURE OF PUBLIC MONEY AND HOLD DEFENDANTS PERSONALLY LIABLE FOR PRIOR EXPENDITURES HELD DEMURRABLE FOR JOINDER OF LEGAL AND EQUITABLE CAUSES.—Bill to enjoin county officials from borrowing and expending money for particular project, and seeking to hold members individually and personally responsible for funds already expended, *held* demurrable as an attempt to join a strictly legal cause of action with an equitable one.

13. INJUNCTION—GENERAL EQUITY OF BILL MAY ALWAYS BE CONSIDERED ON APPLICATION FOR INTERLOCUTORY RELIEF.—On an applica-

tion for an interlocutory injunction, it is always proper to consider the general equity of the bill.

14. INJUNCTION—EACH APPLICATION FOR INTERLOCUTORY RELIEF DEPENDS ON OWN FACTS AND IS ADDRESSED TO DISCRETION OF CHANCELLOR.—Each case of application for interlocutory injunction depends on its own facts and is addressed to the sound discretion of the Chancellor.

15. INJUNCTION—RULE AS TO GRANT OF INJUNCTION PENDENTE LITE DOES NOT APPLY IN ABSENCE OF SHOWING OF IRREPARABLE INJURY. —Rule that Court will grant injunction *pendente lite* when essential to preservation of legal right alleged in complaint does not apply in absence of showing of irreparable injury.

16. INJUNCTION—INJUNCTION AGAINST EXERCISE BY PUBLIC AUTHORITIES OF POWERS EXPRESSLY CONFERRED WILL NOT BE GRANTED, IN ABSENCE OF CLEAR SHOWING OF INJURY AND WHERE GRANT WILL INVOLVE LOSS TO COUNTY.—In case involving exercise by public authorities of powers expressly conferred, where there is no clear showing of threatening injury, and where interlocutory relief would involve loss to county, Court of Equity will not interpose its extraordinary remedy of injunction.

Before SHIPP, J., Florence, June, 1927.   Affirmed.

Action by H. C. Tallevast, on behalf of himself and other taxpayers of the County of Georgetown, against Harold Kaminski, individually and as Chairman of the Board of County Commissioners of Georgetown County, and others. From order denying interlocutory injunction, plaintiff appeals.

The following are successive orders, denying successive applications for interlocutory relief, and plaintiff's exceptions:

ORDER

This matter comes before me on a motion of the defendants to dissolve the restraining order granted by me on the application of the plaintiff under date of June 18th. The scope of such restraining order was to enjoin the defendants, pending the further order of this Court, from using or expending certain funds borrowed by the County, and now in its treasury, as alleged in the complaint. The motion is supported by various affidavits and exhibits. The matter thus before me for consideration does not involve a decision on

the merits of the issues raised by the parties.   I am dealing solely with the problem whether from the standpoint of equity jurisdiction, the complaint and supporting papers present such a case as requires interlocutory relief to prevent irreparable injury or damage, or the continuance of *ultra vires* acts on the part of the defendant County Commissioners.

"Many of the material allegations of the complaint, including the basic charge that the acts of the defendants are not within scope or contemplation of the statutory provisions upon which the complaint is founded, are made on information and belief, and there are no allegations showing the source of such information or the grounds of such belief.   This in itself is a fundamental objection to the granting of interlocutory relief by way of a temporary injunction, and to the continuance of the restraining order. *Pickman v. Georgetown County,* 130 S. C., 18; 125 S. E., 191.

"Nor does it appear from the complaint that if on the final hearing the acts of the defendants should be so shown to be illegal, as charged, the plaintiff will suffer irreparable injury or damage.

"On the showing made I do not think that an important public project, such as the one disclosed in the moving papers, and in the complaint itself, should be disturbed, with possible serious loss to the County, and interference with the public convenience, pending the hearing of the case on its merits.

"Counsel for both parties having been heard, and the matter having been carefully considered by me, it is ordered, adjudged, and decreed that the restraining order heretofore granted by me in this cause against the defendants, individually, and as members of the board of County Commissioners of Georgetown County, and against Harold Kaminski, as chairman of the board, be and the same hereby is dissolved and rescinded and is without further operation."

No written notice of the filing of this order has ever been served on plaintiff or his attorneys.

ORDER

"This action was commenced by the service of a summons and verified complaint, dated the 17th day of June, 1927. Upon such complaint and the exhibits attached thereto, I granted a temporary restraining order, and required the defendants to show cause before me on the 1st day of July, 1927, why they should not be permanently enjoined as prayed in the complaint. In due time, before July 1, 1927, the defendants noticed a motion before me to dissolve the temporary restraining order above referred to. The matter came up for hearing, and after consideration of the complaint, exhibits, and various affidavits and counter affidavits of the parties, I concluded that the plaintiff had not made out such a case as entitled him to the relief prayed, and I accordingly dissolved the restraining order.

"Under date of July 7, 1927, and within 20 days after the service of the original summons and complaint, the plaintiff served upon the defendants an amended summons and complaint, with certain exhibits and affidavits attached, and upon such amended complaint I granted a temporary restraining order, and required the defendants to show cause before me on the 15th day of July, 1927, why they should not be perpetually enjoined as prayed. The matter now comes before me on the returns of the defendants to such restraining order, together with reply affidavits and exhibits submitted by the plaintiff.

"The primary problem presented is whether, upon the proceedings above referred to, the order granted at the first hearing did not preclude the plaintiff from obtaining an additional restraining order, or further applying for injunctive relief.

"While the strict doctrine of *res adjudicata* is not 3–5 involved, it is fundamental that litigants will not be permitted by successive applications to the Court to raise questions which have already been decided against

them. Sound principles of public policy affecting the orderly conduct of the business of the Courts, as well as the prevention of the use of legal remedies to unduly harass parties proceeded against, require that a moving party submit to the Court in the first instance all of the facts and circumstances upon which he relies, and not hold back some of such facts for the purpose of renewing his application in the event that his first attempt should prove unsuccessful. The underlying rule appears to be that where interlocutory relief has been dissolved or refused, a second application for such relief must be founded upon facts other than those set forth in the original application, and that such new facts must not have been known to or reasonably ascertainable by the moving party at the time of the first application. In 1 High on Injunctions, 30, 31, the rule is thus expressed: 'It is within the discretion of a Court of equity to revive an injunction, after it has been dissolved, and upon a proper showing of complainant's right to relief the injunction will be reinstated, the Court being regarded as always open for this purpose. And where sufficient facts are stated in a supplemental bill to warrant an injunction it will be granted, although the injunction granted on the original bill has been dissolved. And when an interlocutory injunction is allowed, but the bill is afterwards dismissed for want of prosecution, the final order of dismissal does not operate as *res adjudicata* upon the question involved. But when a second bill is filed to obtain a second injunction, in relation to the same subject-matter and between the same parties, it is not enough to allege new grounds of equity not suggested in the former bill; it must be shown that the new equity alleged did not exist at the time the original bill was filed, or, if it existed, that it was unknown to the complainant. Nor will an injunction once dissolved be reinstated simply upon new evidence, no new ground of equity being stated which was not alleged in the original bill.'

" 'Ordinarily, a second application for injunction should only be granted in the exercise of a sound discretion, and would be denied unless the petition set up facts which were unknown at the time of the first application; but this rule applies only where the second application is to operate on the same act sought to be enjoined in the first application.' 14 R. C. L., 327.

" 'As a general rule the second application will be denied merely on a showing that the first one was denied, unless complainant presents new and additional matter discovered since the former hearing. The renewal of a motion for an interlocutory injunction on grounds or on evidence which should have been presented on the first application will be discouraged; and an application once refused will not at a later stage be granted except in a clear case.' 32 C. J., 366.

"These principles are recognized and applied by our Supreme Court. *Jordan v. Wilson,* 69 S. C., 53; 48 S. E., 37. *Montgomery v. Robinson,* 93 S. C., 247, 252; 76 S. E., 188.

"Under the rules expressed in these authorities, it is apparent that unless in the present case an examination of the amended pleadings discloses new facts in support of the relief claimed—new facts which were not known to or ascertainable by the plaintiff at the time of the institution of the original action—the restaining order granted on the amended bill should be dissolved, and injunctive relief refused. As set forth in the case of *Jordan v. Wilson, supra,* the remedy of a disappointed litigant in a case where interlocutory relief is granted or refused is by way of appeal. In that case, after referring to the various statutory provisions relating to the granting and dissolution of interlocutory injunctive orders, the Court said:

" 'These provisions manifestly contemplate that a defendant may have an opportunity to be heard on the question of a temporary injunction; if he is not heard in the first instance, he may on motion to dissolve be heard. Any sub-

sequent application for a reconsideration of the question is in the nature of a review, which [under] Section 335 declares [now Section 636 of the Code of Procedure, 1922], can only be had as prescribed in the chapter regulating appeals.'

"Reviewing the pleadings and supporting papers in the light of the above principles, I am satisfied that the proceedings on the amended bill constitute an attempt on the part of the plaintiff to obtain a review by me of my own order, granted in the original proceeding. There are no such new facts alleged as can bring the case within the exceptions to the rule prohibiting a second application to the Court for relief which has been once refused.

"The original complaint consisted of twelve paragraphs. The amended complaint contains thirteen paragraphs, of which the first eleven and the thirteenth are practically identical with the twelve paragraphs of the original complaint. The twelfth paragraph states a series of conclusions of law, all of which are founded upon the facts set forth in the original complaint and in the first eleven paragraphs of the amended complaint.

"The verification of the amended complaint differs from that in the original complaint, in that it undertakes to disclose the sources of knowledge and grounds of belief on the part of the plaintiff as to the facts alleged by him on information and belief, and in this manner attempts to meet some of the objections to the original complaint which I set forth in my previous order. But this verification fails to accomplish the purpose. The sources of information given are the records of the office of the County Commissioners of Georgetown County, and admissions made by the defendants, and sworn statements of certain members of the Georgetown County delegation, but no indication is given as to what records of the County Commissioners are referred to, what admissions of the defendants are relied upon, or which members of the Georgetown County delegation are referred to. The verifi-

cation might be considered clarified on these points by referring to the supporting affidavits annexed to the bill of complaint, but when this is done it is found that these affidavits bring to the attention of the Court precisely the same facts which were brought before the Court by affidavit at the original hearing, the only difference being that in the present matter the affidavits are annexed to the complaint, whereas in the original hearing they were submitted separately in the form of reply affidavits.

"Nor is the case helped in this regard when the exhibits and affidavits used by the plaintiff by way of reply to the return of the defendants are resorted to. As I will show in dealing with other questions in this case, a large part of such material is entirely irrelevant to the issues before me, but at this point the essential fact is that such supporting papers fail to set out any new facts bearing upon the right of the plaintiff to the injunctive relief prayed—certainly no facts which were not known to and available to him upon the original proceeding.

"My conclusion on this phase of the case is that on the facts presented to me by the pleadings and supporting papers, the plaintiff has not made out a case different from that presented in the original proceeding. The remedy of the plaintiff, if he wished to challenge the correctness of the rulings made by me, was by way of appeal.

"While on the above grounds alone I feel constrained to dissolve the restraining order and to refuse an injunction, I have carefully considered the earnest and able argument of plaintiff's counsel with respect to the equitable principles involved in the questions made by the pleadings.

"The plaintiff's cause of action is founded upon his primary position that under the Act of 1927 (35 St. at Large, p. 863), referred to in the pleadings, the defendants were not empowered to borrow, and that therefore they cannot lawfully spend the funds which are sought to

be subjected to the injunction prayed in this case. The plaintiff's contention that the act in question, by its terms alone, or by such terms when construed in the light of collateral interpretative considerations, does not empower the board of County Commissioners of Georgetown County to carry out the Waccamaw Ferry project, does not appear to me to be sound. The project was expressly provided for by an Act passed by the Legislature in 1926 (34 St. at Large, p. 1527) and referred to in the pleadings. This Act also made provisions for the requisite funds to carry out the project. These funds were deposited in Bank of Georgetown, which suspended business before any substantial progress had been made with the work. The closing of this bank not only tied up the particular fund in question, but also large sums of money held by the County in connection with other public projects, and the conduct of its affairs generally. To meet this situation the Àct of 1927 was passed, authorizing among other things, the borrowing of money by the County 'in such amounts and at such times as may be necessary to carry out and complete such contracts as are now outstanding.' The loan made by the County in the present connection was made in pursuance of that Act, and in the absence of any showing to the contrary, it must be presumed that the loan was made in strict accordance with the terms of the Act. In the light of the returns of the defendants, there can be no question about the fact that at the time of the passage of this Act there were outstanding contracts and obligations relating to the ferry project, as contemplated by the statute, and it is apparent that in going on with the project the defendants are carrying out the provisions of the Acts of 1926 and 1927. The Act of 1927 must be read in the light of all cognate legislation, and whatever the views of individual members of the Legislature may have been or may be as to the precise purpose or scope of the statute, they and the Court are bound by the language used and the reasonable interpretation of such language in the

light of the manifest purpose of the Legislature as disclosed by the Act of 1926, and other applicable statutes.

"The powers of the County Commissioners to install ferry routes and to build the necessary abutments, wharves, connecting roads, etc., is not dependent upon the legislation referred to in the pleadings in this cause. The general statutes of the State confer broad powers upon County Commissioners in this regard. The legislation of 1926 was not passed for the purpose of granting or increasing such powers, but solely to provide a means of financing the particular ferry project now in question, and the Act of 1927 supplements the existing legislation by providing such additional means of financing the project as were called for by the fact that the funds procured under the Act of 1926 are temporarily tied up in a closed banking institution. It will be seen, therefore, that not only is the project sustainable both under the general laws of the State and under the special provisions of the Act of 1926, but that the financing of the project is likewise expressly and specially provided for.

"I am not overlooking the numerous exhibits and affidavits contained in the papers filed by the plaintiff by way of reply to the return of the defendants. My view of the matter is that the expressions of the members of the Legislature as to their understanding of the meaning or purpose of the Act in question can have no bearing upon the legal issue as to the construction and application of the law. It is apparent that there is a sharp division among at least certain sections of the people of Georgetown County as to the wisdom or propriety of the ferry project, but this Court can concern itself only with the law as it finds it. In the absence of facts which should control the conscience of a Judge sitting as a chancellor, the duty of the Court is to weigh the problem in the scales of justice governed by the applicable principles of law. The responsibility for the wisdom of the project, or for the manner in which it is being carried out, is legis-

lative and executive, and under the Constitution and laws of the State is committed to the power and discretion of others than this Court.

"It is a settled principle in the interpretation of statutes that even where there is some ambiguity or uncertainty in the language used, resort cannot be had to the opinions of legislators or of others concerned in the enactment of the law for the purpose of ascertaining the intent of the Legislature. To resort to the views of individuals, even of legislators, after the legislation has been enacted, would involve the interpretation of the law in endless confusion and uncertainty. The rule is thus expressed in 25 R. C. L., 1037, 1038:

" 'There is a general acquiescence in the doctrine that the statements and opinions of the legislators uttered in debates in Congress or in the State Legislature are not appropriate sources of information from which to discover the meaning of the language of a statute passed by such body. The law as it is passed is the will of the majority of both houses, and the only mode in which that will is spoken is in the Act itself, and the rule that the intention of the Legislature is the primary consideration in the construction of a statute does not permit the Courts to consider statements made by the author of a bill or by those interested in its passage, or by members of the Legislature adopting the bill, showing the meaning or effect of the language used in the bill as understood by the person or persons making such statements. The reason for this is that it is impossible to determine with certainty what construction was put upon an Act by the members of the legislative body that passed it by resorting to the speeches of individual members thereof. Those who did not speak may not have agreed with those who did; and those who spoke might differ from each other.'

"I do not think, however, that it is necessary to rely upon the above principle of law to support the actions of the defendants in this case. The language of the statute in pro-

viding for the completion of outstanding contracts is of such plain import as to be susceptible of application without extrinsic aids. I can see no sound reason for excluding the Waccamaw Ferry project from its terms.

"As to the contention of the plaintiff that the Acts of the defendants will result in subjecting him and other taxpayers of Georgetown County to the payment of taxes to meet the expenditures made and to be made in connection with the ferry project out of the loan in question, it is pertinent to point out, as indicated above, that it appears from the pleadings and supporting papers themselves that this borrowed fund is a substitute for a fund of an equal amount now to the credit of the County of Georgetown in Bank of Georgetown, where it was placed when borrowed under the terms of the Act of 1926. In accordance with the governing statutes, the County obtained collateral for the deposit, and also expects to receive substantial dividends from the bank itself. It is not at all clear from a consideration of all of the papers before me that the County will not obtain reimbursement of its deposit in Bank of Georgetown sufficient, with the collateral in its hands, to discharge the loan now in question.

"As previously pointed out, the verification of the amended bill does not adequately or properly set forth the sources of information or the grounds of belief on the part of the plaintiff with respect to such allegations as are made on information and belief. The inadequacy of the verification in this regard, coupled with the fact that many of the material allegations of the amended complaint are made on information and belief, brings the matter squarely within the terms of my former order, in which I pointed out that an application for injunctive relief cannot be maintained where the material allegations are made on information and belief, and the sources of the plaintiff's information and the grounds of his belief are not fully set forth.

"In the amended bill, as in the original bill, the relief asked by the plaintiff includes a prayer that the defendants be declared personally and individually responsible for so much of the fund in question as they have already expended. The allegations of the amended bill are as consistent with this part of the prayer for relief as with the prayer for injunction, and construing the amended bill as a whole it would appear that the objects of the proceeding are of the twofold character indicated. In this light it seems to me that the bill would be demurrable, in that it seeks to join a strictly legal course of action against the defendants individually, with an action against them in their official capacity on the equity side of the Court. While I am not resting the decision of the matter on this ground, it is always proper to consider the general equity of the bill upon an application for interlocutory relief by way of injunction.

"I have given careful consideration to the argument of the plaintiff's attorneys that under the case of *Cudd v. Calvert,* 54 S. C., 457; 32 S. E., 503, and a long line of other decisions in this state dealing with the subject of interlocutory injunctions, the Court in this case should grant an injunction for the purpose of holding the matter *in statu quo,* since any other course will result in the complete expenditure of the fund before the case is reached for hearing on its merits. The doctrine that a Court of equity will grant an injunction *pendente lite,* where the same is essential to the assertion and preservation of a legal right alleged in the complaint, does not require any departure from the conclusions above expressed. In the first place, the rule is not of universal application. Each case depends upon its own facts, and is addressed to the sound discretion of the chancellor. In the absence of a showing of irreparable injury to the plaintiff, the rule has no application. *A. C. L. R. R. Co. v. Baker,* 134 S. C., 106; 131 S. E., 678.

"And obviously, in a case where the correctness of the plaintiff's contentions depends upon the construction of legislative enactments, and such contentions are not adopted by the Court, the necessary foundation for the application of the rule is absent.

"In the *Cudd case,* which involved the issuance of bonds by a municipality for railroad purposes, the legal capacity of both the railroad and the municipality was called in question. The proceeding was brought to stay the issuance of the bonds, and challenged the legality of the project on a number of grounds which required a consideration of the case on its merits before the true rights of the parties could be ascertained. A strong *prima facie* case was made against the validity of the case complained of. In the present matter the bonds have already been issued and sold; the project is specifically authorized by legislation of unquestioned constitutionality; the capacity of the County both under the general laws of the State and under the special legislation now in question appears to be plain; and there is no showing of any facts or conditions suggesting the necessity of further inquiry in order to preserve the rights or property of the plaintiff and other taxpayers against irreparable injury or damage. In a case involving the exercise by public authorities of powers expressly conferred upon them, where there is no clear showing of threatened injury of a material character to the complaining party, and where the granting of interlocutory relief would involve considerable loss to the County by reason of the work already done on the project and serious inconvenience to that section of the public for whose benefit the project was undertaken, a Court of equity will not interpose its extraordinary remedy of injunction.

"I have weighed carefully the various contentions urged upon me by the plaintiff's attorneys, but when the issues before me are limited by the pleadings and such of the supporting papers as may be properly considered as applicable

thereto, I can find no such equity in the case as to warrant the continuance of the restraining order or the granting of interlocutory relief.

"While I have gone into the merits of the contentions made before me, in justice to the forcible presentation of the same by counsel, it must be clearly understood that I am not undertaking to decide the case on its merits. The matter before me relates exclusively to the granting of interlocutory relief. Nothing that I have said above is to be taken as affecting the rights of the parties upon the final hearing of the cause.

"My views as to the rights of the plaintiff at this stage of the case being as above expressed, it is ordered, adjudged, and decreed that the restraining order heretofore granted by me under date of July 7th is without further operation or effect.

"Further ordered that the returns of the defendants, considered in connection with all of the pleadings and proceedings in this cause, show sufficient cause why the defendants should not be perpetually restrained and enjoined pending the hearing of the cause on its merits, within the terms of the aforesaid order of July 7, 1927, and that a temporary injunction in the premises be and the same hereby is refused."

## EXCEPTIONS

1. That his Honor, the Circuit Judge, erred in dissolving the restraining order issued by him on the original complaint.

2. That his Honor erred in dissolving the restraining order issued by him on the original complaint and giving as one of his reasons therefor that many allegations of the complaint were stated on information and belief, which constituted a fundamental objection to granting interlocutory relief by way of a temporary injunction; the error being that his Honor should have considered the admissions in the answer of the defendants, and affidavits and exhibits submitted, in connection with the complaint.

3. That his Honor erred in dissolving the restraining order issued by him on the amended complaint and in holding that at the time of the passage of the Act of 1927, referred to in the pleadings, there were outstanding contracts relating to the ferry project; the error being that the determination of this question could only be established by a trial of the case on the merits.

4. That his Honor erred in dissolving the restraining order issued by him on the amended complaint, and in effect holding that the County Commissioners were authorized to borrow and spend the funds in question for a ferry project under the general laws of the State, and that the financing of the project is likewise expressly and specially provided for.

5. That his Honor erred in dissolving the restraining order issued by him on the amended complaint, and in holding that the verification of the amended complaint does not adequately and properly set forth the sources of information or the grounds of belief on the part of the plaintiff with respect to such allegations as are made on information and belief; the error being that the restraining order issued by him was based on the verified complaint, together with affidavits attached thereto.

6. That his Honor erred in dissolving the restraining order issued by him on the amended complaint and in holding that an application for injunctive relief cannot be maintained where material allegations are made on information and belief, and the sources of the plaintiff's information and the grounds of his belief are not fully set forth; the error being that the restraining order was issued on the amended verified complaint, together with affidavits attached thereto, and his Honor should have considered all the pleadings and affidavits submitted in reaching his decision.

7. That his Honor erred in dissolving the temporary restraining order issued by him on the amended complaint and in refusing to grant an injunction pending the hearing on the

merits, because the complaint and the affidavits submitted on behalf of plaintiff conclusively showed that the plaintiff would suffer irreparable injury unless relief was granted.

8. The action being primarily for the purpose of obtaining an injunction, and the complaint stating a cause of action and showing, with the affidavits submitted in support thereof, that a temporary injunction is essential to the assertion and preservation of a legal right, his Honor erred in dissolving the restraining order and in refusing to preserve the *status quo* pending the hearing on the merits.

*Messrs. Barr & Smith,* for appellant, cite: *As to granting of injunction pendente lite:* 69 S. C., 156; 37 S. C., 223; 75 S. C., 221; 60 S. C., 681; 92 S. C., 418; 42 S. C., 101; 51 S. C., 434; 54 S. C., 457; 62 S. C., 196; 67 S. C., 84; 87 S. C., 566; 69 S. C., 52. *Distinguished:* 130 S. C., 18. *Court of equity empowered to prevent unlawful appropriation of funds:* 11 Cyc., 513; 40 S. E., 287. *Injunction proper:* 7 R. C. L., 965; Id., 666. *As to when order of dissolution res adjudicata:* 59 S. E., 940. *No legal authority to borrow money for purpose used here:* Ar. 10, Sec. 6, Const. 1895; Sec. 1122, Code; 34 Stat., 1527; 35 Stat., 863. *Construction of statutes:* 3 McC., 306; 2 Strob., 474; 99 S. C., 218; 2 L. Ed., 304; 20 L. Ed., 227; 23 L. Ed., 224; 25 R. C. L., 962; 56 S. C., 173; 113 S. C., 99; 26 L. Ed., 967; 2 Bail., 334; 22 S. C., 301; 112 S. C., 128; 128 S. C., 14; 25 R. C. L., 1076-1078; 129 S. C., 497; 14 S. C., 194; 117 S. E., 563.

*Messrs. M. W. Pyatt,* and *J. Monroe Spears,* for respondents, cite: *Order of dissolution res adjudicata:* 69 S. C., 52; 93 S. C., 247, 252; 214 Fed., 465; 57 L. Ed., 379; 1 High on Inj., 30; 14 R. C. L., 327; 32 C. J., 366, 410, 411; 16 A. & E. Enc., 365; 58 S. C., 152; 93 S. C., 249; 59 S. E., 946. *Authority to borrow here:* Secs. 2904, 2906, 2907, 2937, Code. *"Contract":* 1 El. & Bl., 178; 2 Words & Phrases (1st), 1534; 1 Words & Phrases (2nd), 1000; 76

Pac., 958, 961; 102 S. W., 313. *Appeal:* Sec. 646, Code Proc; 12 S. C., 563; 16 S. C., 475; 40 S. C., 548; 67 S. C., 252. *Construction of statutes:* 25 R. C. L., 957, 958, 961, 962, 1037, 1038; 26 A. & E. Enc. L., 638, 639; 86 S. E., 577, 581, 582; 92 S. C., 374; 32 A. L. R., 1518. *Cases distinguished:* 134 S. C., 402. *Injunctive relief granted here only upon clear showing of a violation of law or of oppressive action:* 86 S. C., 400; 130 S. C., 18; 4 Pom. Eq. Jur. (4th ed.), 1765; 14 R. C. L., 312, 313; 32 C. J., 29-34; 27 S. C., 409; 87 S. C., 566, 568. *Granting of interlocutory injunction within discretion of Judge:* 75 S. C., 220, 222; 69 S. C., 156, 159; 69 S. C., 551. *Extent of damages to both sides will have weight in reaching conclusion:* 15 Pom. Eq. Jur. (4th Ed.), 4283; 32 C. J., 81, 82; Id., 36, 37; 113 S. E., 347; 85 S. C., 13.

June 13, 1928.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

The purpose of this action, instituted in the Court of Common Pleas of Georgetown County, was to obtain a permanent restraining order against the defendants, as to the matters set forth in the complaint. In view of the full and clear agreed statement of the case appearing in the transcript, we adopt the same as the statement of the Court, namely:

"This action was commenced by plaintiff on behalf of himself and all other taxpayers of the County of Georgetown who may come in and contribute to the expense of this action, for the purpose of enjoining and restraining the defendants from the further expenditure of funds for purposes which the plaintiff alleges the defendants had no authority to borrow the same for. Plaintiff asks to have the action of the defendants in borrowing said money and pledging the credit of Georgetown County for the repayment thereof declared illegal and without warrant of law. On the verified

complaint his Honor, Judge S. W. G. Shipp, on the 18th day of June, 1927, issued a rule to show cause and restraining order whereby the defendants were required to appear before his Honor in Florence, S. C., on July 1, 1927, and show cause why they should not be restrained and prohibited from using, expending, or causing to be used or expended said funds for and on account of the purposes and things set forth in the complaint. The summons and complaint, and the restraining order and rule to show cause, were served on the defendants on the 20th day of June, 1927. Thereafter the defendants served on plaintiff's attorneys an answer, demurrer, return to the rule to show cause, notice of motion to dissolve the said restraining order, and affidavits. On the hearing of said motion before his Honor, Judge S. W. G. Shipp, on the 30th day of June, 1927, Judge Shipp issued his order dated July 1, 1927, filed on the 2d day of July, 1927, dissolving said restraining order. Thereupon, and within 20 days after service of the original summons and complaint, plaintiff presented to Judge Shipp an amended complaint with affidavits and exhibits attached, and upon such amended complaint with affidavits and exhibits Judge Shipp granted a rule to show cause and restraining order, whereby the defendants were required to appear before his Honor in Myrtle Beach, S. C., on July 15, 1927, and show cause why they should not be enjoined as prayed. The amended summons and complaint and the restraining order and rule to show cause were served on the defendants on the 9th day of July, 1927. The defendants in due time served on plaintiff their return to the rule to show cause together with various affidavits. On hearing the return of the defendants, together with reply affidavits and exhibits submitted by the plaintiff, his Honor, Judge Shipp, issued his order dated July 18, 1927, dissolving said restraining order."

From the orders issued by his Honor, Judge Shipp, dissolving the temporary restraining orders, discharging the rule, and refusing the injunction prayed for, the plaintiff

has appealed to this Court, imputing error to his Honor, Judge Shipp, as alleged in the several exceptions.

In his consideration of the case Judge Shipp goes thoroughly into the questions raised; and gives an interesting, clear, and able discussion of the facts and law involved. After a careful study, we agree with the conclusion reached by him, and for the reasons assigned the appellant's exceptions are overruled.

It is therefore the judgment of this Court that the orders appealed from be, and are hereby, sustained, and the judgment of the Circuit Court affirmed.

MR. CHIEF JUSTICE WATTS, and MESSRS. JUSTICES COTHRAN, BLEASE, and STABLER concur.