[No. 27437.   *En Banc.*   April 28, 1939.]

THE CITY OF SPOKANE, *Respondent,* v. THE STATE OF
WASHINGTON, *Appellant.*[1]

'Reported in 89 P. (2d) 826.

*The Attorney General* and *R. G. Sharpe, Assistant,* for appellant.

*G. M. Ferris, B. A. Farley,* and *H. E. T. Herman,* for respondent.

*W. E. Heidinger, amicus curiae.*

ROBINSON, J.—In July, 1938, this court handed down an opinion in the case of *Pacific Tel. & Tel. Co. v. Henneford,* 195 Wash. 553, 81 P. (2d) 786, in which it held that, in enacting Title IV, Laws of 1935, chapter 180, p. 726, as amended by Laws of 1937, chapter 191, p. 943, Rem. Rev. Stat. (Sup.), § 8370-31 [P. C. § 7030-91] *et seq.,* levying a tax "for the privilege of using" within the state of Washington "any article of tangible personal property purchased subsequent to April 30, 1935," it was the legislative intent that such tax should not be levied with respect to the use of articles not available for purchase within the state.

During the following October, the city of Spokane, relying upon the rule laid down in that case (which, for the sake of brevity and convenience, will herein-

after be referred to as the telephone case), appealed to the superior court of Thurston county from a levy and assessment by the state tax commission of taxes with respect to the use by the city of certain articles of personal property purchased subsequent to April 30, 1937, and used in the maintenance and operation of its waterworks system. It was agreed by the parties to the case that the articles involved were classifiable as follows:

(A) Articles which, at the time of purchase and use, were neither manufactured, nor available for purchase, in the state of Washington;

(B) Articles which could be purchased in the state, but could not be had in sufficient quantity to satisfy the city's needs;

(C) Articles which could be purchased in the state, but were not of the quality required to fill the city's needs;

(D) Articles, satisfactory in quality, which were manufactured, or were available for purchase, in the state of Washington in quantities sufficient for the city's needs.

Briefly, the position taken by the city was that, under the decision in the telephone case, it was not taxable as to the privilege of using the articles falling under classifications A, B, and C, and, this being so, not even as to the articles classified under D. For, it contended, the legislative attempt to exact a tax on the use of competitive articles, while exempting non-competitive articles, constituted an arbitrary and capricious classification, violative of the equal protection clause of the 14th amendment to the Federal constitution and of the special privilege and immunity clause of the state constitution; hence, Title IV and the whole thereof is void.

The trial court accepted the city's contention and

granted its prayer that the tax be abated with reference to the use of all four classes of articles. As to a portion, at least, of that relief, the trial court had no option in the matter, unless it chose to disregard the decision of this court in the telephone case. If that decision was correct as to the proper interpretation of the statute, the decision of the lower court in this case was correct, at least in part; but, if the interpretation of the statute made in the telephone case is erroneous and unsound, then the judgment appealed from must be reversed in its entirety.

For the purpose of supporting its contention that the interpretation put upon Title IV in the opinion in the telephone case was erroneous, the state took the oral testimony of the members of the state tax commission at the trial. The depositions of the governor of the state, of the chairman of the revenue and taxation committee of the Senate during the 1935 session, of the chairman of the same committee of the House, and of the speaker of the House during that session, had already been taken, stating, apparently, what they, respectively, thought the act meant at the time when each of them exercised his appropriate functions with regard to it.

Nor was this all. Affidavits executed by thirty-three senators and sixty-eight representatives who served in the 1935 legislative session, and by thirty-three senators and seventy representatives who served in the 1937 session, were also offered in evidence. These affidavits are to the same effect, being upon identical forms prepared and sent out to the respective legislators, for their execution under oath. We set out the form sent to the members of the 1935 legislature, quoting it from the appendix to the state's brief:

"That affiant was one of the duly elected, qualified and acting members of the legislature of the State of

Washington at the 1935 session thereof, affiant having been a ............................................ (Senator or representative) elected from ............................................ county; that affiant has read Title IV of Chapter 180, Laws of Washington of 1935, said Chapter being House Bill 237 introduced at the 1935 session of said legislature, and that a true and correct copy of said Title IV is printed on the back of the sheet containing this affidavit and is by reference made a part hereof.

"That when said House Bill 237 came on for final passage in the ............................................ ............................ (Senate or House of Representatives) of which affiant was so a member, affiant voted ............................ (for or against) said House Bill 237. That at the time affiant so voted on said House Bill 237 and at all times thereafter, affiant's understanding of the meaning of said House Bill 237 was that (subject alone to the exemptions expressly set forth in section 32 thereof) the tax or excise levied by said Title IV was imposed for the privilege of using within the State of Washington all tangible personal property purchased at retail after April 30, 1935, and was imposed with respect to all such personalty including tangible personal property of a kind, type, name or character not sold at wholesale or retail in the State of Washington, and including tangible personal property of a kind, type, name or character not made, produced or manufactured in the State of Washington.

"That when affiant voted on the final passage of said House Bill 237, affiant's understanding of the purpose of the tax imposed by Title IV thereof was that its exaction was to compensate the State of Washington for its loss of revenue resulting from the fact that the retail sales tax imposed by Title III of said House Bill 237 could not be lawfully collected from Washington purchasers with respect to interstate sales.

"That at no time during said 1935 legislative session, or thereafter, so far as affiant can now recall, did any member of said 1935 legislature ever indicate to affiant or in affiant's presence or hearing that such member's understanding of the meaning, purpose or effect of said Title IV, was different from affiant's understanding thereof as set forth in this affidavit.

"That at said 1935 session of the Washington legislature, affiant was ...................... (or was not) a member of the Committee on Revenue and Taxation of the ................................ (Senate or House), which committee recommended the passage of said House Bill 237."

The depositions of the various state officers and the affidavits of the legislators were not read into the record, but were offered as exhibits. The city strenuously objected to their admission. The trial judge held them inadmissible, but permitted them to be made a part of the record on the remote chance that this court might think otherwise. They remain unread in the unbroken original package in which they were brought here; for, it is perfectly clear, both upon reason and authority, that the legislative intent in passing the statute cannot be shown or proven in any such manner. 59 C. J. 1017, 1038; *Pagaud v. State,* 13 Miss. 491; *Wiseman v. Madison Cadillac Co.,* 191 Ark. 1021, 88 S. W. (2d) 1007, 103 A. L. R. 1208; *Ex parte Goodrich,* 160 Cal. 410, 117 Pac. 451, Ann. Cas. 1913A, 56; *In re Lavine,* 2 Cal. (2d) 324, 41 P. (2d) 161; *Barlow v. Jones,* 37 Ariz. 396, 294 Pac. 1106; *Stewart v. Atlanta Beef Co.,* 93 Ga. 12, 18 S. E. 981, 44 Am. St. 119; *Abernethy v. Board of Commissioners,* 169 N. C. 631, 86 S. E. 577; *Goins v. Indian Training School,* 169 N. C. 736, 86 S. E. 629; *Tallevast v. Kaminski,* 146 S. C. 225, 143 S. E. 796; *Ocean Forest Co. v. Woodside,* 184 S. C. 428, 192 S. E. 413.

At the time the telephone case was decided, there was a great deal to indicate that various state officers, charged directly or indirectly with the administration of Title IV, Laws of 1935, chapter 180, as amended in 1937, had, previously and from the time of the original passage of the act, given it the interpretation which the court adopted in the opinion in that case. As pointed out in the opinion, the state tax com-

mission, in its regulations issued in October, 1935, said,—and substantially the same language appears in regulations issued after the 1937 amendment:—

"The primary purpose of the Compensating Tax is to protect the merchants of Washington from discrimination arising by reason of our inability, under Federal Law, to impose a tax upon sales made to our residents by competitive merchants in other states."

With reference to that declaration, an able and distinguished Federal judge had said, in an opinion in *Northern Pac. R. Co. v. Henneford,* 15 Fed. Supp. 302:

"In the absence of this frank declaration, it is plain from the law itself that such is its primary purpose."

Nor was this all. In reversing a three-judge district court in an appeal prosecuted by the legal representatives of the state (*Silas Mason Co. v. Henneford,* 15 Fed. Supp. 958), the supreme court, speaking of the compensating feature of the 1935 revenue law, said in *Henneford v. Silas Mason Co.,* 300 U. S. 577, 581, 81 L. Ed. 814, 57 S. Ct. 524:

"The practical effect of a system thus conditioned is readily perceived. One of its effects must be that retail sellers in Washington will be helped to compete upon terms of equality with retail dealers in other states who are exempt from a sales tax or any corresponding burden. Another effect, or at least another tendency, must be to avoid the likelihood of a drain upon the revenues of the state, buyers being no longer tempted to place their orders in other states in the effort to escape payment of the tax on local sales."

Starting with these declarations and precedents, the opinion in the telephone case arrived at the interpretation therein made by drawing certain inferences from the fact that, in labeling Title IV of the 1935 revenue act, the legislature used the words "compensating tax".

Upon a reexamination of that opinion in the light

of evidence given in this case, it appears that the opinion attached a greater importance to the October, 1935, regulation of the tax commission than it deserved; for the testimony of the members of the commission given in this case shows that the commission, in the actual administration of the act from the time it went into effect in 1935, levied the tax with respect to use of articles purchased without the state, though not available for purchase within. What the commission did, rather than what it said, establishes its administrative construction of the act; and, in the light of this testimony, the regulation itself becomes, at most, a mere opinion of no more materiality than the opinions expressed in the depositions of other state officers which we have refused to consider.

Furthermore, the regulation quoted in the opinion in the telephone case does not attempt to state all the purposes of the act, but only the primary purpose, and at all events could not have been intended to have the effect which the court ascribed to it; for we find that the very next paragraph of the regulation reads as follows:

"In general, the Compensating Tax applies upon the use of any property, the sale of which would have been subject to our sales tax had it been purchased within the state. Conversely, it does not apply upon the use of any property, the sale of which has been subjected to our sales tax. Thus, these two methods of taxation stand as complements to each other in our state revenue plan, and taken together, provide a uniform tax upon either the sale or use of *all* tangible personal property, *irrespective of where it may have been purchased.*" (Italics ours.)

We are further of the opinion that the word "compensating" was given unwarranted significance in reaching the interpretation arrived at in the telephone case. Laws of 1935, chapter 180, p. 706, is a statute

of 144 pages in length. It is entitled, "Revenue Act of 1935," and is divided into twenty titles, viz: "Title I. Introductory Provisions. Title II. Business and Occupation Tax. Title III. Tax on Retail Sales. Title IV. Compensating Tax," and so on. The words "compensating tax" are not used in the title of the act, nor in the body or text of the act, but merely as a label on a subdivision, as shown above, and this, in accordance with the classification and indexing system provided in § 1, p. 707, which reads, in part, as follows:

"Section 1. The provisions of this act are herein classified and designated as follows:

"Sections 1 to 3, inclusive: Title I.—Introductory Provisions.

"Sections 4 to 15, inclusive: Title II.—Business and Occupation Tax.

"Sections 16 to 30, inclusive: Title III.—Tax on Retail Sales.

"Sections 31 to 35, inclusive: Title IV.—Compensating Tax."

In Laws of 1937, chapter 191, amending the original act, the words "compensating tax" do not appear in the text of the statute, but are used as a general heading to that chapter as it appears in the session laws. But the scope and intent of a statute is not controlled by the name given to it by way of designation or description. *Caminetti v. United States,* 242 U. S. 470, 61 L. Ed. 442, 37 S. Ct. 192, Ann. Cas. 1917B, 1168, L. R. A. 1917F, 502. It is a matter of common knowledge, as well as of repeated judicial record, that many an amateur came to grief through assuming that a Federal statute, expressly designated by Congress as the "White-slave Traffic Act," was intended to cover only purely professional activities. It seems certain at least that, if the name given to a statute, or the designations given to its subdivisions, can ever be resorted to in determining the purpose and intent of the

statute, it can only be done when there is an ambiguity in its text.

"If the language be clear it is conclusive. There can be no construction where there is nothing to construe." *United States v. Hartwell,* 6 Wall. 385, 396, 18 L. Ed. 830.

" . . . 'the province of construction lies wholly within the domain of ambiguity,' *Hamilton v. Rathbone,* 175 U. S. 414, 419, 421, . . ." *Van Camp & Sons v. American Can Co.,* 278 U. S. 245, 253, 73 L. Ed. 311, 49 S. Ct. 112, 60 A. L. R. 1060.

"When the language of the act is plain, free from ambiguity, and devoid of uncertainty, it is unanimously held that there is no room for construction, . . ." *Walker v. Spokane,* 62 Wash. 312, 318, 113 Pac. 775, Ann. Cas. 1912C, 994.

The language of the act under consideration, that is, its text, the body of the law, as we shall show later, is entirely free from ambiguity.

Earlier in this opinion, we cite a list of authorities to the point that a legislator who participated in the passage of an act cannot be permitted to testify as to its object and meaning. An examination of those cases will show that most of them, in discussing that point, state the true rule by which the meaning of a statute and the intention of the legislature in enacting it must be found. That rule, however, is stated tersely and accurately in one of our own decisions, *In re Sanborn,* 159 Wash. 112, 118, 292 Pac. 259:

"The intention of the legislature is to be deduced from what it said."

With the purpose of showing accurately what it said, we quote the pertinent portion of Laws of 1937, chapter 191, the statute which governs the instant case:

*"Be it enacted by the Legislature of the State of Washington:*

"Section 1. Section 31 of chapter 180 of Session Laws of 1935 (8370-31, Remington's Revised Statutes), be and the same hereby is amended to read as follows:

"Section 31. From and after the first day of May, 1935, there is hereby levied and there shall be collected from every person in this state a tax or excise for the privilege of using within this state any article of tangible personal property purchased at retail or produced or manufactured for commercial use. This tax will not apply with respect to the use of any article of tangible personal property purchased, produced or manufactured outside this state until the transportation of such article has finally ended or until such article has become commingled with the general mass of property of this state. Such tax shall be levied and collected in any amount equal to the value of the article used by the taxpayer multiplied by the rate of two per cent.

"Sec. 2. Section 32 of chapter 180 of Session Laws of 1935 (8370-32, Remington's Revised Statutes) be and the same hereby is amended to read as follows:

"Section 32. The provisions of this title shall not apply:

"(a) In respect to the use of any article of tangible personal property brought into the State of Washington by a non-resident thereof for his or her use or enjoyment while temporarily within the state unless such property is used in conducting a non-transitory business activity within the state;

"(b) In respect to the use of any article of tangible personal property if the sale thereof has already been subjected to tax under title III of this act and such tax has been paid by the purchaser;

"(c) In respect to the use of any article of tangible personal property purchased at retail the sale of which would have been specifically exempt from the tax imposed under title III of this act had the sale thereof been made within the state;

"(d) In respect to the use of tangible personal property put to use during any bi-monthly period, the total value of which is less than fifty ($50.00) dollars;

"(e) In respect to the use of rolling stock or aircraft or floating equipment of a common carrier, the

first use of which within the state is actual use in conducting interstate or foreign commerce." Laws of 1937, chapter 191, pp. 943, 944, §§ 1, 2 (Rem. Rev. Stat. (Sup), §§ 8370-31, 8370-32 [P. C. §§ 7030-91, 7030-92]).

This is a statute of a familiar type, first, a section (amended § 31, p. 726) stating a law in general terms, and then a section (amended § 32, p. 726) stating a list of exceptions thereto, in this instance five, (a), (b), (c), (d), and (e). There is no ambiguity about either section. Amended § 31 says the tax shall be levied for the privilege of using within this state any article of tangible personal property purchased at retail or produced or manufactured for commercial use; and, as stated in the tax commission regulation, which was overlooked in the preparation of the opinion in the telephone case, this includes the "use of all tangible personal property, irrespective of where it may have been purchased." It is equally clear that the express exceptions in § 32 do not in any way purport to except the use of articles from taxation which are not manufactured, or available for purchase, in the state of Washington.

"It is a general rule that an express exception excludes all others." 59 C. J. 1092, note 75.

"It is well settled that an exception in a statute amounts to an affirmation of the application of its provisions to all other cases not excepted and excludes all other exceptions." 25 R. C. L. 983.

"An express exception, exemption or saving excludes others. Where a general rule has been established by statute with exceptions the court will not curtail the former nor add to the latter by implication." 2 Sutherland on Statutory Construction (2d ed.), 923, § 494.

The logic of the rule stated in the foregoing quotations is self-evident. The consequences of an infraction of the rule have been forcibly stated in our own decisions.

"To construe a further exception into the statute . . . is to legislate judicially—an abhorrent thing— . . . ." *Exchange Nat. Bank v. United States,* 147 Wash. 176, 186, 265 Pac. 722, 62 A. L. R. 139; *In re Dickson's Estate,* 197 Wash. 145, 84 P. (2d) 661.

It follows that the decision of this court in *Pacific Tel. & Tel. Co. v. Henneford,* 195 Wash. 553, 81 P. (2d) 786, must be, and it hereby is, overruled, in so far as it holds that the tax provided for by Title IV, Laws of 1935, chapter 180, as amended by Laws of 1937, chapter 191, is not leviable with respect to the use of articles of personal property that are not manufactured, or available for purchase, in this state.

There remains one other matter to be disposed of. The respondent city did not rely exclusively upon the decision in the telephone case. Its attorneys, both in their briefs and upon the oral argument, vigorously contended that the tax in question is in reality a property tax and, hence, invalid, as violative of constitutional provisions as to uniformity. If that question were still open in this state, the contention so made would require extended examination in this opinion, but we recently said, in *State ex rel. Hansen v. Salter,* 190 Wash. 703, 70 P. (2d) 1056:

"It is urged that the exaction is a property tax—not an excise—and therefore denies 'equal protection of the laws' guaranteed by the fourteenth amendment of the constitution of the United States, and the demands of equality and uniformity in taxation under the fourteenth amendment to the state constitution. *That a tax upon the use of personal property is an excise, is no longer open to question in this state. Morrow v. Henneford,* 182 Wash. 625, 47 P. (2d) 1016; *Vancouver Oil Co. v. Henneford,* 183 Wash. 317, 49 P. (2d) 14; *Henneford v. Silas Mason Co.,* 300 U. S. 577, 57 S. Ct. 524. Being an excise, the tax is not objectionable upon the grounds suggested." (Italics ours.)

The majority of the court, as it is now constituted, are still of that opinion.

The judgment appealed from is reversed, and the action is ordered dismissed.

BLAKE, C. J., MAIN, BEALS, GERAGHTY, SIMPSON, and JEFFERS, JJ., concur.

MILLARD, J. (dissenting)—I dissent. No useful purpose would be subserved by an elaborate dissent. It is enough to say that I am not convinced by the foregoing majority opinion that the position of this court in *Pacific Tel. & Tel. Co. v. Henneford,* 195 Wash. 553, 81 P. (2d) 786, is unsound.