# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-01083-SCT

*MISSISSIPPI GAMING COMMISSION, GENERAL PAUL A. HARVEY, IN HIS OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE MISSISSIPPI GAMING COMMISSION, W. W. GRESHAM, JR., ROBERT ENGRAM AND VICTOR P. SMITH, ALL IN THEIR OFFICIAL CAPACITY AS COMMISSIONERS OF THE MISSISSIPPI GAMING COMMISSION*

*v.*

*IMPERIAL PALACE OF MISSISSIPPI, INC., A NEVADA CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/11/97 |
| TRIAL JUDGE: | HON. J. N. RANDALL, JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | OFFICE OF THE ATTORNEY GENERAL BY: M. CAROLE BRAND |
| ATTORNEY FOR APPELLEE: | BRITT R. SINGLETARY |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED - 9/2/1999 |
| MOTION FOR REHEARING FILED: | 09/16/99; denied 2/24/2000 |
| MANDATE ISSUED: | 3/2/2000 |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. This case presents, as a matter of first impression, the issue of whether the Mississippi Gaming Control Act of 1990, Miss. Code Ann. §§ 75-76-1 to -281 (1991 & Supp. 1999), legalizes the operation of race book in licensed casinos. We conclude that there is no express exemption to the general prohibition against such activities and

that the Gaming Commission's conclusion that race book is not permitted under the statute should be given deference. Accordingly, we reverse and render judgment in favor of the Gaming Commission.

## I.

¶2. Appellee Imperial Palace of Mississippi, Inc. ("IPM"), a Nevada corporation, has been licensed by the Mississippi Gaming Commission (the Commission or MGC) to conduct a gaming establishment in Biloxi, Mississippi. On June 18, 1997, IPM wrote the Commission to request approval to establish race book on the premises of its new casino in Biloxi.[1] The Executive Director of the Commission, denied IPM's request on July 2, 1997, stating that:

> Although section 75-76-89(2) of the Gaming Control Act provides that "[a] person who has been issued a gaming license may establish a sports pool or race book on the premises of the establishment at which he conducts a gaming operation only after obtaining permission from the executive director," section 75-76-33(3)(a) does not allow wagering "on the outcome of any event which does not take place on the premises." Because the races will be disseminated from a remote track, it does not appear that Imperial Palace can comply with section 75-76-33(3)(a).

¶3. On July 30, 1997, IPM filed a complaint in the Chancery Court of the Second Judicial District of Harrison County seeking a declaratory judgment authorizing IPM to operate a race book on the premises of its casino and directing the Commission to promulgate rules and regulations to regulate race book.

¶4. The Commission answered IPM's complaint on August 6, 1997 and joined IPM in asking the court to issue a declaratory judgment on the legality of the operation of race book in a licensed Mississippi casino.

¶5. A hearing on IPM's complaint and the Commission's answer was held on August 6, 1997. Several witnesses testified in support of legally permitting the operation of race book in licensed casinos in Mississippi. They were: Scott Scherer, a Nevada Assistant Attorney General, who at the request of the Mississippi Attorney General, acted as an expert advisor in the drafting of the Mississippi Gaming Control Act; a State Senator and a State Representative who testified concerning the legislative intent and history behind the act; Sam Begley, an attorney who researched and testified on the legislative history of the act; Jay Kornegay, Race and Sports Book Director of Imperial Palace of Las Vegas, Nevada; and Bill Eddington, Ph.D., Professor of Economics and Director of the Institute for the Study of Gambling and Professional Gaming.

¶6. On August 11, 1997, the chancery court issued its declaratory judgment and

memorandum opinion declaring race book lawful in Mississippi. The court found the race book to be expressly authorized pursuant to Miss. Code Ann. §§ 75-76-55 & -89 (1991). The court further found that Miss. Code Ann. § 75-76-33(3)(a) does not apply to prohibit the Commission from granting permission to IPM to conduct race book on its premises.

¶7. From that judgment, the Commission appeals.

## II.

¶8. The Commission raises the issue of whether the Mississippi Gaming Control Act of 1990 legalizes the operation of race book in licensed casinos, where races are disseminated from remote tracks. In reviewing the factual findings of a chancellor sitting without a jury, we apply the substantial evidence standard. We will not disturb those findings which are supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. *Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc.,* 716 So. 2d 200, 204 (Miss. 1998). In reviewing the chancellor's legal conclusions, we apply a de novo standard and conduct a plenary review of all legal issues. *Mississippi State Tax Comm'n v. Oscar E. Austin Trust*, 719 So. 2d 1172, 1173 (Miss. 1998).

¶9. Miss. Code Ann. § 75-76-55 (1991) provides that it is unlawful to carry on any gambling activity, including race book, without first obtaining a gaming license. § 75-76-55, specifically states that:

(1) It is unlawful for any person, either as owner, lessee, or employee, whether for hire or not, either solely or in conjunction with others, without having first procured and thereafter maintaining in effect a state gaming license:

(a) To deal, operate, carry on, conduct, maintain or expose for play in the State of Mississippi any gambling game, including without limitation any gaming device, slot machine, **race book**, or sports pool;

(b) To provide or maintain any information service the primary purpose of which is to aid the placing or making of wagers on events of any kind; or

(c) To receive, directly or indirectly, any compensation or reward or any percentage or share of the money or property played, for keeping, running or carrying on any gambling game, including without limitation any slot machine, gaming device, **race book** or sports pool.

(2) It is unlawful for any person knowingly to permit any gambling game, including without limitation any slot machine, gaming device, **race book** or sports

pool to be conducted, operated, dealt or carried on in any house or building or other premises owned by him, in whole or in part, by a person who is not licensed pursuant to this chapter or by his employee.

(Emphasis added). Miss. Code Ann. § 75-76-89(2) (1991), further provides, however, that:

> (2) A person who has been issued a gaming license may establish a sports pool or **race book** on the premises of the establishment at which he conducts a gaming operation only after obtaining permission from the executive director.

(Emphasis added).

¶10. Relying on § 75-76-89(2), IPM sought permission from the Executive Director of the Commission to operate a race book on its licensed premises in Biloxi, Mississippi. The Executive Director denied IPM's request stating that Miss. Code Ann. § 75-76-33(3)(a) prohibited race book. That section provides that:

> (3) Notwithstanding any other provision of law, each licensee shall be required to comply with the following regulations:
>
> (a) No wagering shall be allowed on the outcome of any athletic event, nor on any matter to be determined during an athletic event, nor on the outcome of any event which does not take place on the premises.

Miss. Code Ann. § 75-76-33(3)(a) (Supp. 1999).

¶11. There are obvious conflict and ambiguity between several provisions of the Mississippi Gaming Control Act with regard to race books. Where statutes are ambiguous or in conflict with one another, it is proper to resort to the rules of statutory construction. The polestar consideration for this Court is legislative intent. In *City of Jackson v. Lakeland Lounge of Jackson, Inc.,* 688 So. 2d 742, 747 (Miss. 1996) (quoting *Quitman County v. Turner,* 196 Miss. 746, 759-60, 18 So. 2d 122 (1944)), we said:

> Legislative intent as an aid to statutory construction, although often elusive to the unaided vision, remains nevertheless the pole star of guidance... We are not to construe clarity out of obscurity but intent out of inconsistency.... It is our duty to support a construction which would purge the legislative purpose of any invalidity, absurdity or unjust inequality.

¶12. In determining legislative intent we first look to the words used in the statute. "[w]hatever the legislature says in the text of the statute is considered the best evidence of the legislative intent." *Pegram v. Bailey,* 708 So. 2d 1307, 1314 (Miss. 1997) (quoting

***McMillan v. Puckett***, 678 So. 2d 652, 657 (Miss. 1996) (Banks, J., dissenting)). It is only upon reading the two statutory provisions together that any ambiguity arises. It cannot be assumed, from a plain reading of the statutes, that race books are excluded from the general prohibition against betting on events which take place off premises, where § 75-76-33(3)(a), expressly prohibits betting on off premise events "notwithstanding any other provision of law." An exception must be clear from the language of the statute and cannot be created by construction. ***[Mississippi Dep't of Wildlife, Fisheries & Parks v. Mississippi Wildlife Enforcement Officers' Ass'n, Inc.](), No. 97-CA-0186-SCT, 1999 WL 628148, \*6 (Miss. 1999)***. If the Legislature had wanted to exempt race books from the prohibition, it could have done so by including language excluding race books. However, as it stands, the Legislature provided for no exemptions to the blanket prohibition against betting on off-site events.

¶13. In resolving the issue, the trial court relied on testimony as to legislative history and legislative intent. However, testimony below regarding the legislative history of the statute, does not aid in resolving the ambiguity. There was testimony to the effect that a proposed amendment to § 75-76-33(3)(a) (Supp. 1999), which specifically prohibited horse and dog racing, was defeated, thereby, inferring that the Legislature's refusal to include specific prohibitions against horse and dog racing, indicates the legislative intent to allow race book. However, it is equally logical to assume that the Legislature felt it unnecessary to make specific prohibitions where the statute prohibited "*any* event which does not take place on the premises." § 75-76-33(3)(a) (Supp. 1999) (emphasis added).

¶14. Additionally, the trial court erred by allowing testimony from legislators as to motive or intent of their respective bodies. The Legislature's intent in regard to the Mississippi Gaming Control Act was testified to by several witnesses at trial. Imperial Palace, the appellee, called as witnesses one Senator and one member of the House of Representatives to testify as to legislative intent. While examination of legislative intent is necessary to determine the meaning of ambiguous or contradictory statutes, this Court has stated that:

> . . . The intent which must stamp the character of this instrument, is that of the legislature which enacted the law; not of the officers who were to execute it, or of the persons who received the warrants. The legislative intent can be deduced from the legislative acts alone. . . . Testimony to explain the motives which operated upon the law-makers, or to point out the objects they had in view, is wholly inadmissible. It would take from the statute law every semblance of certainty, and make its character depend upon the varying and conflicting statements of witnesses.

***Pagaud v. State***, 13 Miss. (15 S. & M.) 491, 497 (1845).

¶15. This Court has had occasion in the past to employ several rules of statutory construction and extrinsic aids in construing conflicting statutes. In ***Roberts v. Mississippi Republican Party State Executive Comm.,*** 465 So. 2d 1050, 1052 (Miss. 1985), we said that "[s]tatutes on the same subject, although in apparent conflict, should if possible be construed in harmony with each other to give effect to each." Quoting ***Lamar County School Bd. v. Saul,*** 359 So. 2d 350, 353 (Miss. 1978), we stated that; "In construing statutes, all statutes *in pari materia* are taken into consideration, and a legislative intent deduced from a consideration as a whole." ***Roberts,*** 465 So. 2d at 1052 (citations omitted).

¶16. However, another rule of statutory construction dictates that the interpretation of a statute by the agency charged with enforcing it is entitled to deference by the courts unless that interpretation is repugnant to the plain meaning of the statute, ***[Ricks v. Mississippi State Dep't of Health](), 719 So. 2d 173, 179 (Miss. 1998)***, or the best reading of the statute. ***Grant Center Hosp. of Mississippi, Inc. v. Health Group of Jackson, Mississippi, Inc.,*** 528 So. 2d 804, 808 (Miss. 1988). Further guidance can be found in ***[Chevron U.S.A. v. Natural Res. Def. Council](), 467 U.S. 837, 842-43 (1984)***, in which the United States Supreme Court set out the federal process to follow when a court is faced with the task of construing an ambiguous statute which has been interpreted by the agency which administers the statute. The court is to first determine whether the statute is in fact ambiguous. ***Id.*** If it is, the court is not to simply apply the traditional rules of construction to the statute; rather the court is to apply a deferential standard under which the issue is whether the agency's interpretation is a reasonable construction. ***Id. Chevron*** further points out that:

> [t]he court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached it the question initially had arisen in a judicial proceeding.

***Id.*** at 843 n.11.

¶17. Here, the Commission takes the position that the statute prohibits race books. The Commission argues that it relied on the clear and unambiguous language of § 75-76-33(3)(a) to deny IPM approval to operate a race book on its premises. The Commission points out that the Mississippi Gaming Control Act was modeled on the Nevada Act and that § 75-76-33(3)(a) does not appear in the Nevada Act. It is the Commission's contention that the Legislature foresaw that with the rush to adopt the Gaming Control Act, contradictory provisions contained in the Nevada model would inadvertently be included in the Mississippi Act. Thus, the "notwithstanding any other provision in the law" language was deliberately chosen. We conclude that the

Commission's interpretation of the statute is not repugnant to the plain meaning or the best reading of the statute, and therefore, should be given deference.

¶18. It has been urged that the rule of construction which holds that a specific statute controls over a general statute dictates that the fact that § 75-76-89(2) specifically mentions race book, exempts race book from the general prohibition against betting on off premises events contained in § 75-76-33(3)(a). This argument would not prevail, even if we were to decline to afford deference to the agency's interpretation. Section 75-76-33(3)(a) states that it is to apply "[n]otwithstanding any other provision of law." A statute containing a "notwithstanding" clause is effective regardless of other statutes to the contrary. *Wright v. Professional Services Industries, Inc.*, 956 P.2d 230, 231-32 (Or. App. 1998) *review denied* 966 P.2d 221 (Or. 1998). *See also***Morningstar Water Users Assoc. v. New Mexico Public Utility Comm'n**, 904 P.2d 28, 37 (N.M. 1995) (holding that "[g]enerally, a 'notwithstanding' clause serves to prevent the matters following the clause from being frustrated by other statutory provisions."). The specific statute vs. general statute rule of construction only applies "when statutes are irreconcilably inconsistent." *Id.* at 231. To the extent that there is any conflict between § 75-76-33(3)(a) and § 75-76-89(2), it is merely a matter of giving effect to § 75-76-33(3)(a)'s "notwithstanding" clause. *Id.* at 232. To hold otherwise would require ignoring the notwithstanding clause altogether or would require that we rewrite § 75-76-33(3)(a) to read "notwithstanding any other provision of [] law except [§ 75-76-89(2)] ." *Id.* at 232. Neither of which we are willing to do.

## CONCLUSION

¶19. For the above and foregoing reasons, the chancellor's declaratory judgment is reversed, and judgment is rendered here in favor of the Commission finally denying the requested declaratory relief and dismissing IPM's complaint and this action with prejudice and with all costs assessed against IPM.

¶20. **REVERSED AND RENDERED.**

**PRATHER, C.J., SMITH, WALLER AND COBB, JJ., CONCUR. MILLS, J., CONCURS IN RESULT ONLY. PITTMAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND McRAE, J.**

**PITTMAN, PRESIDING JUSTICE, DISSENTING:**

¶21. Because I disagree with the majority's analysis regarding the rules of statutory construction, I must respectfully dissent.

¶22. It is proper to resort to the rules of statutory construction where statutes are ambiguous or in conflict with one another. "[W]here there are two conflicting provisions in the same statute, the last expression of the Legislature must prevail over the former. Undoubtedly that principle of statutory construction is sound." *Coker v. Wilkinson,* 142 Miss. 1, 16, 106 So. 886, 887 (1926); accord, *Warner v. Board of Trustees of Jackson Mun. Separate Sch. Dist.,* 359 So. 2d 345, 347 (Miss. 1978). Under this rule of statutory construction, Miss. Code Ann. § 75-76-89(2) (Supp. 1999) , which expressly grants licensed casinos the right to seek permission from the Commission to establish a race book, must prevail over Miss. Code Ann. § 75-76-33(3)(a) (Supp. 1999), which prohibits wagering on the outcome of any event or athletic event which does not take place on the premises.

¶23. In *McCrory v. State,* 210 So. 2d 877, (Miss. 1968), this Court made it clear that when two statutes encompass the same subject matter, the specific statute controls over the general statute. *See also [Mauney v. State ex rel. Moore,* 707 So. 2d 1093, 1095 (Miss. 1998)]; *Yarbrough v. Camphor,* 645 So. 2d 867, 872 (Miss. 1994); *Wilbourn v. Hobson,* 608 So. 2d 1187, 1191 (Miss. 1992); *Dye v. State ex rel. Hale,* 507 So. 2d 332, 342 (Miss. 1987). Miss. Code Ann. § 75-76-89(2) (Supp. 1999) specifically grants a licensed casino the right to seek permission of the Commission to operate a race book on its premises. Miss. Code Ann. § 75-76-33(3)(a) (Supp. 1999) is a general prohibition against wagering on the outcome of athletic events which do not take place on the premises. Applying this Court's rule, the specific statute controls over the general, and therefore, Miss. Code Ann. § 75-76-89(2) (1991) controls.

¶24. Further, this Court should accept, for whatever value it may have, the testimony of legislators in regard to legislative history, not to be the authority or have controlling weight, but as a method to determine legislative history and to gain insight into legislative intent. In the case *sub judice*, this court finds acceptable as proper evidence the testimony of a legislative lobbyist and an attorney who represents clients engaged in gaming activities but refuses to accept the testimony of legislative members as to the history of and the intent of legislative actions. Why should we deny this prime source of information from consideration by the courts and at the same time accept the testimony of an attorney who is also a lobbyist for the affected parties?

¶25. Based on the text of the statutes as well as the familiar rules of statutory construction, it is clear that the Legislature legalized the operation of race book in licensed casinos. This was the declaratory judgment rendered by the chancellor, and therefore, his judgment should be affirmed.

¶26. I respectfully dissent.

**SULLIVAN, P.J., AND McRAE, J., JOIN THIS OPINION.**

1. "Race book" is the business of accepting wagers upon the outcome of any event held at a track which uses the pari-mutual system of wagering." Miss. Code Ann. § 75-76-5(cc) (Supp. 1999).