# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-01045-SCT

*MARSHALL FISHER*

*v.*

*MICHAEL DRANKUS*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/02/2015 |
| TRIAL JUDGE: | HON. CAROL L. WHITE-RICHARD |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ANTHONY LOUIS SCHMIDT, JR. |
| | SHANNON JONES |
| | DARRELL CLAYTON BAUGHN |
| ATTORNEYS FOR APPELLEE: | JACOB WAYNE HOWARD |
| | J. CLIFTON JOHNSON, II |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 12/08/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.     The State appeals from the Sunflower County Circuit Court's order granting partial

relief on Michael Drankus's motion for declaratory and injunctive relief. Drankus, an inmate

in the custody of the Mississippi Department of Corrections (MDOC), sought a declaratory

judgment that Mississippi Code Section 47-7-3.1 is a mandate to MDOC which requires

MDOC to develop a "case plan" for all parole-eligible inmates and that MDOC is in

violation of that section. Drankus also sought an order that would reverse an adverse

decision by MDOC's Administrative Remedy Program (ARP); an injunction directing

MDOC to promulgate policies and procedures that comply with Section 47-7-3.1; and an order directing MDOC to develop a case plan for Drankus. The circuit court ruled only on MDOC's adverse ARP decision, found that, based on the circuit court's interpretation of Section 47-7-3.1, Drankus is entitled to receive a case plan pursuant to Section 47-7-3.1, and so ordered. MDOC appeals that decision. Finding that Drankus is not entitled to a case plan, we reverse the circuit court's order.

### FACTS AND PROCEDURAL HISTORY

¶2.     In August 2014, Drankus filed an ARP request with MDOC that he be issued a case plan pursuant to "Section 43 of House Bill 585 (2014)," prescribing that "all inmates who are eligible for parole are to be issued a case plan to guide in their rehabilitation while in the custody of MDOC."[1]

¶3.     In October 2014, MDOC issued its "first step response" to Drankus's ARP request, denying the request on the basis that "[House] Bill 585 does not apply to [Drankus], due to [the fact he was] sentenced in 1987[;] [t]he Bill only affect[s] offenders who [were] sentenced on or after [July 1, 2014] and the Bill is not retroactive."

¶4.     In November 2014, Drankus proceeded to "step two" of the ARP. In his "step two" appeal, Drankus again contended that "Section 43 of [HB] 585 (which was codified as

---

[1] Section 43 of House Bill 585 is codified at Mississippi Code Section 47-7-3.1. House Bill 585 is a comprehensive criminal-justice and corrections-reform bill that amended and added numerous provisions of state law. *See* H.B. 585 § 42, 2014 Leg. Reg. Sess. (Miss. 2014). The complete text of House Bill 585 is available at: http://billstatus.ls.state.ms.us/documents/2014/pdf/HB/0500-0599/HB0585SG.pdf (last visited December 6, 2016.)

2

Mississippi Code Section 47-7-3.1)[2] was created so that *all* parole-eligible inmates would be issued 'case plans' to guide in their rehabilitation during incarceration." Drankus asserted that "[b]y law, I am entitled to have a case plan," and repeated his "request[] that the MDOC develop one for me and provide me a written copy."

¶5.    In December 2014, MDOC issued its "second-step response," maintaining that Drankus is ineligible to receive a case plan because he was sentenced in 1987 and HB 585 applies only to those parole-eligible inmates sentenced on or after July 1, 2014.

¶6.    Drankus thereafter sought judicial review of MDOC's ARP decision in the Sunflower Circuit Court.  After reviewing Drankus's ARP request and MDOC's response, the circuit court held that "Miss. Code Ann. § 47-7-3.1 is plain and unambiguous in stating that, 'the department shall develop a case plan for all parole eligible inmates to guide an inmate's rehabilitation while in the department's custody and to reduce the likelihood of recidivism after release.'" Acknowledging Drankus's reference to newly enacted Mississippi Code Section 47-7-18(1)(a), the circuit court agreed with Drankus's argument that the Legislature intended to create a statutory scheme which must be read collectively in order to understand its intent to address parole eligibility and that MDOC's failure to give Drankus a case plan would thwart the Legislature's intent.  Accordingly, the circuit court ordered that Drankus, "whom [MDOC] admits in its response is a parole eligible inmate, is entitled to a case plan pursuant to the statutory mandate."

**ANALYSIS**

---

[2] *See* appendix for full text of Mississippi Code Section 47-7-3.1.

3

¶7.     MDOC contends Drankus is ineligible to receive a parole case plan pursuant to the provisions of Section 47-7-3.1 and that the language contained in Section 47-7-3.1 requires the issuance of parole case plans to apply prospectively rather retrospectively.  Specifically, MDOC points to Section 47-7-3.1(2), which states "Within ninety (90) days of admission, the department shall complete a case plan on all inmates . . . . ," and Section 47-7-3.1(4), which states, "The department shall ensure that the case plan is achievable prior to the inmate's parole eligibility date."  MDOC contends that it would be impossible for MDOC to comply with the statute as drafted if it were applied retroactively to offenders such as Drankus, who were convicted and sentenced prior to July 1, 2014, the date Section 47-7-3.1 went into effect.

¶8.     MDOC further contends the circuit court failed to consider the interaction and language present in Mississippi Code Section 47-7-18, which MDOC refers to as the "presumptive parole statute,"[3] which also went into effect on July 1, 2014.  MDOC says it is clear Drankus is ineligible for "presumptive parole," because his parole-eligibility date is more than eighteen years in the past, occurring on July 11, 1997.

¶9.     An agency's interpretation of its governing statutes is a question of law, subject to de novo review, but with deference to the agency's interpretation.  ***Diamond Grove Ctr., LLC v. Miss. State Dep't of Health***, 98 So. 3d 1068, 1071 (Miss. 2012).   Unless an agency's interpretation of a statute "is repugnant to the plain meaning thereof, [the courts are] to defer to the agency's interpretation."  ***Id.*** (quoting ***Queen City Nursing Ctr., Inc. v. Miss. State***

---

[3] *See* appendix for full text of Mississippi Code Section 47-7-18.

4

*Dep't of Health*, 80 So. 3d 73, 84 (Miss. 2011)). "This does not mean we 'yield judgment or opinion' to an agency's statutory interpretation, as '[t]he ultimate authority and responsibility to interpret the law, including statutes, rests with this Court.'" *Id*. "Rather, when determining the most reasonable and appropriate interpretation of a statute, the agency's interpretation is an important factor that usually warrants strong consideration." *Id*. "[C]ourts will not, however, give deference to an agency's statutory interpretation if it is so plainly erroneous or so inconsistent with either the underlying regulation or statute as to be arbitrary, capricious, or contrary to the unambiguous language or best reading of a statute." *Dialysis Sols., LLC v. Miss. State Dep't of Health*, 31 So. 3d 1204, 1211 (Miss. 2010).

¶10.    Here, we find MDOC's interpretation of Section 47-7-3.1 to be reasonable and not inconsistent with the language of the statute and ascertainable legislative intent.  As MDOC points out, Section 47-7-3.1 contains operative mandates which indicate that the section's parole-case-plan directive was intended to apply prospectively.  Subsection (2) says MDOC shall complete a case plan for all inmates within ninety days of an inmate's admission.  Miss. Code Ann. § 47-7-3.1(2).  And paragraph (a) in subsection (3) says a caseworker shall notify the inmate of his parole eligibility date within ninety days of the inmate's admission. Miss. Code Ann. § 47-7-3.1(3)(a).  None of these provisions can be met in Drankus's case, since he was admitted into MDOC's custody in 1987.

¶11.    Also indicative that this section was, as MDOC interprets, intended to apply prospectively, is subsection (4)'s mandate that MDOC "shall ensure that the case plan is

achievable prior to [an] inmate's *parole eligibility date*." Miss. Code Ann. § 47-7-3.1(4) (emphasis added). Though we do not have the numbers before us, we know there are numerous inmates like Drankus whose initial parole-eligibility dates passed prior to the 2014 amendments to the probation and parole chapter. Some of these inmates, like Drankus, have been granted parole and subsequently have had their parole revoked, and they may or may not have been granted another "potential" opportunity for parole in the future, given former Mississippi Code Section 47-7-27.[4]

¶12. Nothing in the 2014 amendments addresses such circumstances. And this leaves us guessing at the Legislature's intent.

¶13. The longstanding rule in Mississippi is that "statutes will be construed to have a prospective operation only, unless a contrary contention is manifested by the clearest and most positive expression." *Hudson v. Moon*, 732 So. 2d 927, 930-31 (Miss. 1999) (citing *Anderson v. Jackson Mun. Airport Auth*., 419 So. 2d 1010, 1026 (Miss. 1982)). "A statute will not be construed to be retroactive unless the words admit of no other construction or meaning, and there is a plain declaration in the act that it is." *Id*. at 931; *see also Gray v. Morgan*, 236 Miss. 245, 110 So. 2d 346 (1959) ("where the intention of the legislature to make the statute retroactive is not stated in express terms, or clearly, explicitly, positively, unequivocally, unmistakably, and unambiguously shown by necessary implication or terms which permit no other meaning to be annexed to them, preclude all question in regard thereto, and leave no reasonable doubt thereof").

---

[4] *See* appendix for both former and current Sections 47-7-27.

¶14. That rule applies here, as MDOC elucidated. Because Section 47-7-3.1 does not clearly and unequivocally express an intention for retroactive applicability, we cannot say that Section 47-7-3.1 applies to Drankus.

**CONCLUSION**

¶15. For these reasons, we reverse the circuit court's order requiring that Drankus be issued a case plan under Section 47-7-3.1 and affirm MDOC's ARP decision that Drankus is not entitled to a case plan.

¶16. **REVERSED AND RENDERED.**

  **WALLER, C.J., RANDOLPH, P.J., LAMAR, COLEMAN AND MAXWELL, JJ., CONCUR. DICKINSON, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED IN PART BY KITCHENS, J. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.**

**APPENDIX**

§ 47-7-3.1. **Case plan for parole eligible inmates**

(1) In consultation with the Parole Board, the department shall develop a case plan for all parole eligible inmates to guide an inmate's rehabilitation while in the department's custody and to reduce the likelihood of recidivism after release.

(2) Within ninety (90) days of admission, the department shall complete a case plan on all inmates which shall include, but not [be] limited to:

  (a) Programming and treatment requirements based on the results of a risk and needs assessment;

  (b) Any programming or treatment requirements contained in the sentencing order; and

7

(c) General behavior requirements in accordance with the rules and policies of the department.

(3) The department shall provide the inmate with a written copy of the case plan and the inmate's caseworker shall explain the conditions set forth in the case plan.

(a) Within ninety (90) days of admission, the caseworker shall notify the inmate of their parole eligibility date as calculated in accordance with Section 47-7-3(3);

(b) At the time a parole-eligible inmate receives the case plan, the department shall send the case plan to the Parole Board for approval.

(4) The department shall ensure that the case plan is achievable prior to inmate's parole eligibility date.

(5) The caseworker shall meet with the inmate every eight (8) weeks from the date the offender received the case plan to review the inmate's case plan progress.

(6) Every four (4) months the department shall electronically submit a progress report on each parole-eligible inmate's case plan to the Parole Board. The board may meet to review an inmate's case plan and may provide written input to the caseworker on the inmate's progress toward completion of the case plan.

(7) The Parole Board shall provide semiannually to the Oversight Task Force the number of parole hearings held, the number of prisoners released to parole without a hearing and the number of parolees released after a hearing.

§ 47-7-18. **Hearing for release**

(1) Each inmate eligible for parole pursuant to Section 47-7-3, shall be released from incarceration to parole supervision on the inmate's parole eligibility date, without a hearing before the board, if:

(a) The inmate has met the requirements of the parole case plan established pursuant to Section 47-7-3.1;

(b) A victim of the offense has not requested the board conduct a hearing;

(c) The inmate has not received a serious or major violation report within the past six (6) months;

(d) The inmate has agreed to the conditions of supervision; and

(e) The inmate has a discharge plan approved by the board.

(2) At least thirty (30) days prior to an inmate's parole eligibility date, the department shall notify the board in writing of the inmate's compliance or noncompliance with the case plan. If an inmate fails to meet a requirement of the case plan, prior to the parole eligibility date, he or she shall have a hearing before the board to determine if completion of the case plan can occur while in the community.

(3) Any inmate for whom there is insufficient information for the department to determine compliance with the case plan shall have a hearing with the board.

(4) A hearing shall be held with the board if requested by the victim following notification of the inmate's parole release date pursuant to Section 47-7-17.

(5) A hearing shall be held by the board if a law enforcement official from the community to which the inmate will return contacts the board or the department and requests a hearing to consider information relevant to public safety risks posed by the inmate if paroled at the initial parole eligibility date. The law enforcement official shall submit an explanation documenting these concerns for the board to consider.

(6) If a parole hearing is held, the board may determine the inmate has sufficiently complied with the case plan or that the incomplete case plan is not the fault of the inmate and that granting parole is not incompatible with public safety, the board may then parole the inmate with appropriate conditions. If the board determines that the inmate has sufficiently complied with the case plan but the discharge plan indicates that the inmate does not have appropriate housing immediately upon release, the board may parole the inmate to a transitional reentry center with the condition that the inmate spends no more than six (6) months in the center. If the board determines that the inmate has not substantively complied with the requirement(s) of the case plan it may deny parole. If the board denies parole, the board may schedule a subsequent parole hearing and, if a new date is scheduled, the board shall identify the corrective action the inmate will need to take in order to be granted parole.

Any inmate not released at the time of the inmate's initial parole date shall have a parole hearing at least every year.

(Former) § 47-7-27. **Return of violator of parole or earned release supervision; arrest of offender; revocation of parole; board and hearing officers authorized to administer oaths and summon witnesses.**

The board is hereby authorized at any time, in its discretion, and upon a showing of probable violation of parole, to issue a warrant for the return of any paroled offender to the custody of the Mississippi Department of Corrections. Such warrant shall authorize all persons named therein to return such paroled offender to actual custody of the Department of Corrections from which he was paroled. Pending hearing, as hereinafter provided, upon any charge of parole violation, the offender shall remain incarcerated in any other place of detention designated by the department.

Any field supervisor may arrest an offender without a warrant or may deputize any other person with power of arrest to do so by giving him a written statement setting forth that the offender has, in the judgment of that field supervisor, violated the conditions of his parole or earned-release supervision. Such written statement delivered with the offender by the arresting officer to the official in charge of the department facility from which the offender was released or other place of detention designated by the department shall be sufficient warrant for the detention of the offender.

The field supervisor, after making an arrest, shall present to the detaining authorities a similar statement of the circumstances of violation. The field supervisor shall at once notify the board or department of the arrest and detention of the offender and shall submit a written report showing in what manner the offender has violated the conditions of parole or earned-release supervision. An offender for whose return a warrant has been issued by the board shall, after the issuance of such warrant, be deemed a fugitive from justice.

The law now in effect concerning the right of the State of Mississippi to extradite persons and return fugitives from justice, from other states to this state, shall not be impaired by this chapter and shall remain in full force and effect. An offender convicted of a felony committed while on parole, whether in the State of Mississippi or another state, shall immediately have his parole revoked upon the presentment of a certified copy of the commitment order to the board. If an offender is on parole and the offender is convicted of a felony for a crime committed prior to the offender being placed on parole, whether in

the State of Mississippi or another state, the offender may have his parole revoked upon presentment of a certified copy of the commitment order to the board.

At the next meeting of the board held after the issuance of a warrant for the retaking of any offender, the board shall be notified thereof; and if the offender shall have been taken into custody, he shall then be given an opportunity to appeal to the board in writing or in person why his parole should not be revoked. *The board may then, or at any time in its discretion, terminate such parole or modify the terms and conditions thereof. In the event the board shall revoke parole, the offender shall serve the remainder of the sentence originally imposed unless at a later date the board shall think it expedient to grant the offender a second parole.* In case a second parole shall not be granted, then the offender shall serve the remainder of the sentence originally imposed, and the time the offender was out on parole shall not be taken into account to diminish the time for which he was sentenced.

The chairman and each member of the board and the designated parole revocation hearing officer, in the discharge of their duties, are authorized to administer oaths, to summon and examine witnesses, and take other steps as may be necessary to ascertain the truth of any matter about which they may have the right to inquire.

(Current) § 47-7-27. **Return of violator of parole or earned release supervision; arrest of offender; hearing revocation of parole; imprisonment for technical violation to be served in technical violation center.**

(1) The board may, at any time and upon a showing of probable violation of parole, issue a warrant for the return of any paroled offender to the custody of the department. The warrant shall authorize all persons named therein to return the paroled offender to actual custody of the department from which he was paroled.

(2) Any field supervisor may arrest an offender without a warrant or may deputize any other person with power of arrest by giving him a written statement setting forth that the offender has, in the judgment of that field supervisor, violated the conditions of his parole or earned-release supervision. The written statement delivered with the offender by the arresting officer to the official in charge of the department facility from which the offender was released or other place of detention designated by the department shall be sufficient warrant for the detention of the offender.

(3) The field supervisor, after making an arrest, shall present to the detaining authorities a similar statement of the circumstances of violation. The field supervisor shall at once notify the board or department of the arrest and detention of the offender and shall submit a written report showing in what manner the offender has violated the conditions of parole or earned-release supervision. An offender for whose return a warrant has been issued by the board shall, after the issuance of the warrant, be deemed a fugitive from justice.

(4) Whenever an offender is arrested on a warrant for an alleged violation of parole as herein provided, the board shall hold an informal preliminary hearing within seventy-two (72) hours to determine whether there is reasonable cause to believe the person has violated a condition of parole. A preliminary hearing shall not be required when the offender is not under arrest on a warrant or the offender signed a waiver of a preliminary hearing. The preliminary hearing may be conducted electronically.

(5) The right of the State of Mississippi to extradite persons and return fugitives from justice, from other states to this state, shall not be impaired by this chapter and shall remain in full force and effect. An offender convicted of a felony committed while on parole, whether in the State of Mississippi or another state, shall immediately have his parole revoked upon presentment of a certified copy of the commitment order to the board. If an offender is on parole and the offender is convicted of a felony for a crime committed prior to the offender being placed on parole, whether in the State of Mississippi or another state, the offender may have his parole revoked upon presentment of a certified copy of the commitment order to the board.

(6)(a) The board shall hold a hearing for any parolee who is detained as a result of a warrant or a violation report within twenty-one (21) days of the parolee's admission to detention. The board may, in its discretion, terminate the parole or modify the terms and conditions thereof. If the board revokes parole for a technical violation the board shall impose a period of imprisonment to be served in a technical violation center operated by the department not to exceed ninety (90) days for the first technical violation and not to exceed one hundred twenty (120) days for the second technical violation. For the third technical violation, the board may impose a period of imprisonment to be served in a technical violation center for up to one hundred and eighty (180) days or the board may impose the remainder of the suspended portion of the sentence. For the fourth and any subsequent technical violation, the board may impose up to the remainder of the suspended portion of the

sentence. The period of imprisonment in a technical violation center imposed under this section shall not be reduced in any manner.

(b) If the board does not hold a hearing or does not take action on the violation within the twenty-one-day time frame in paragraph (a) of this subsection, the parolee shall be released from detention and shall return to parole status. The board may subsequently hold a hearing and may revoke parole or may continue parole and modify the terms and conditions of parole. If the board revokes parole for a technical violation the board shall impose a period of imprisonment to be served in a technical violation center operated by the department not to exceed ninety (90) days for the first technical violation and not to exceed one hundred twenty (120) days for the second technical violation. For the third technical violation, the board may impose a period of imprisonment to be served in a technical violation center for up to one hundred eighty (180) days or the board may impose the remainder of the suspended portion of the sentence. For the fourth and any subsequent technical violation, the board may impose up to the remainder of the suspended portion of the sentence. The period of imprisonment in a technical violation center imposed under this section shall not be reduced in any manner.

(c) For a parolee charged with a technical violation who has not been detained awaiting the revocation hearing, the board may hold a hearing within a reasonable time. The board may revoke parole or may continue parole and modify the terms and conditions of parole. If the board revokes parole for a technical violation the board shall impose a period of imprisonment to be served in a technical violation center operated by the department not to exceed ninety (90) days for the first technical violation and not to exceed one hundred twenty (120) days for the second technical violation. For the third technical violation, the board may impose a period of imprisonment to be served in a technical violation center for up to one hundred eighty (180) days or the board may impose the remainder of the suspended portion of the sentence. For the fourth and any subsequent technical violation, the board may impose up to the remainder of the suspended portion of the sentence. The period of imprisonment in a technical violation center imposed under this section shall not be reduced in any manner.

(7) Unless good cause for the delay is established in the record of the proceeding, the parole revocation charge shall be dismissed if the revocation hearing is not held within the thirty (30) days of the issuance of the warrant.

(8) The chairman and each member of the board and the designated parole revocation hearing officer may, in the discharge of their duties, administer

oaths, summon and examine witnesses, and take other steps as may be necessary to ascertain the truth of any matter about which they have the right to inquire.

(9) The board shall provide semiannually to the Oversight Task Force the number of warrants issued for an alleged violation of parole, the average time between detention on a warrant and preliminary hearing, the average time between detention on a warrant and revocation hearing, the number of ninety-day sentences in a technical violation center issued by the board, the number of one-hundred-twenty-day sentences in a technical violation center issued by the board, the number of one-hundred-eighty-day sentences issued by the board, and the number and average length of the suspended sentences imposed by the board in response to a violation.

**DICKINSON, PRESIDING JUSTICE, CONCURRING IN RESULT ONLY:**

¶17.    The majority correctly concludes that Mississippi Code Section 47-7-3.1 does not entitle Drankus to a case plan. But the majority errs by framing the issue as one of prospective versus retroactive application, an error that caused the majority to apply an incorrect legal standard. So I concur in result only.

¶18.    We review questions of statutory interpretation de novo, and "[o]ur primary goal in interpreting statutes is 'to adopt that interpretation which will meet the true meaning of the Legislature.'"[5] "To determine legislative intent, we first look to the language of the statute, and when we find them to be 'clear and unambiguous, we apply the plain meaning' of those

---

[5] ***Legislature of State of Miss. v. Shipman***, 170 So. 3d 1211, 1214–15 (Miss. 2015) (citing ***5K Farms, Inc. v. Miss. Dep't of Revenue***, 94 So. 3d 221, 225 (Miss. 2012); quoting ***Scaggs v. GPCH–GP, Inc.***, 931 So. 2d 1274, 1276 (Miss. 2006)).

words, and we have no need 'to apply principles of statutory construction.'[6] In other words, in the absence of statutory ambiguity, we give effect to a statute's plain language.

¶19.  A different standard applies for the specific question of whether a newly enacted statute should be given a prospective or retroactive application.  "In a long line of cases," we have "followed the rule that" we will construct statutes "to have a prospective operation only, unless a contrary intention is manifested by the clearest and most positive expression."[7] This standard, of course, applies only where the question of retroactive application is at issue. Here it is not.

¶20.  Black's Law Dictionary defines "retroactive" as "extending in scope or effect to matters that have occurred in the past."[8]  It defines "retroactive law" as "[a] legislative act that looks backward or contemplates the past, affecting acts or facts that existed before the

---

[6] *Lawson v. Honeywell Int'l, Inc.*, 75 So. 3d 1024, 1027 (Miss. 2011) (citing *Pinkton v. State*, 481 So. 2d 306, 309 (Miss. 1985); *Clark v. State ex rel. Miss. State Med. Ass'n*, 381 So. 2d 1046, 1048 (Miss. 1980); *Gilmer v. State*, 955 So. 2d 829, 833 (Miss. 2007)).

[7] *Mladinich v. Kohn*, 186 So. 2d 481, 483 (Miss. 1966) (citing *Hooker v. Hooker*, 18 Miss. (S. & M.) 599 (1848); *Brown v. Wilcox*, 22 Miss. (14 S. & M.) 127 (1850); *Richards v. City Lumber Co.*, 101 Miss. 678, 57 So. 977 (1912); *Power v. Calvert Mortg. Co.*, 112 Miss. 319, 73 So. 51 (1916); *State ex rel. Knox v. Union Tank Car Co.*, 151 Miss. 797, 119 So. 310 (1928); *Bell v. Union & Planters Bank & Trust Co.*, 158 Miss. 486, 130 So. 486 (1930); *Miss. Cent. R.R. Co. v. City of Hattiesburg*, 163 Miss. 311, 141 So. 897 (1932); *City of Lumberton v. Schrader*, 176 Miss. 272, 168 So. 77 (1936); *Jefferson Standard Life v. Dorsey*, 178 Miss. 852, 173 So. 669 (1937); *U.S. Fid. & Guar. Co. v. Maryland Cas. Co.*, 191 Miss. 103, 199 So. 278 (1941); *McCullen v. State ex rel. Alexander*, 217 Miss. 256, 63 So. 2d 856 (1953); *Klaas v. Cont'l S. Lines*, 225 Miss. 94, 82 So. 2d 705 (1955); *Horne v. State Bldg. Comm'n*, 233 Miss. 810, 103 So. 2d 373 (1958)).

[8] *Retroactive*, Black's Law Dictionary 1122 (abr. 9th ed.).

15

act came into effect."[9] Drankus does not ask this Court to apply a new statute to "matters that have occurred in the past." Rather, he argues that newly enacted parole statutes should apply to his presently existing parole-eligibility status.

¶21. Our cases considering the prospective/retroactive standard confirm that this standard does not apply to Drankus's claim. In *Mladinich v. Kohn*, we considered whether Mississippi's newly enacted long-arm statute applied to a tort committed before its enactment.[10] Similarly, in *Hudson v. Moon*, we considered whether the repeal of a statute affecting certain property interests affected an interest that vested in the property prior to the repeal.[11] Here, by contrast, we consider what statutes control Drankus's request for a case plan based on his present status as a parole-eligible offender.

¶22. Because this case does not concern the prospective/retroactive distinction, our analysis should begin with the plain language of the statute at issue. Drankus claims he is entitled to a case plan under Mississippi Code Section 47-7-3.1, which provides:

(1)     In consultation with the Parole Board, the department shall develop a case plan for all parole eligible inmates to guide an inmate's rehabilitation while in the department's custody and to reduce the likelihood of recidivism after release.

(2)     Within ninety (90) days of admission, the department shall complete a case plan on all inmates which shall include, but not[be]limited to:

(a)     Programming and treatment requirements based on the results of a risk and needs assessment;

[9] *Retroactive Law*, Black's Law Dictionary 1122 (abr. 9th ed.).

[10] *Mladinich*, 186 So. 2d at 481.

[11] *Hudson v. Moon*, 732 So. 2d 927, 931 (Miss. 1999).

> (b)　Any programming or treatment requirements contained in the sentencing order; and
>
> (c)　General behavior requirements in accordance with the rules and policies of the department.
>
> (3)　The department shall provide the inmate with a written copy of the case plan and the inmate's caseworker shall explain the conditions set forth in the case plan.
>
> > (a)　Within ninety (90) days of admission, the caseworker shall notify the inmate of their parole eligibility date as calculated in accordance with Section 47-7-3(3);
> >
> > (b)　At the time a parole-eligible inmate receives the case plan, the department shall send the case plan to the Parole Board for approval.
>
> (4)　The department shall ensure that the case plan is achievable prior to inmate's parole eligibility date.
>
> (5)　The caseworker shall meet with the inmate every eight (8) weeks from the date the offender received the case plan to review the inmate's case plan progress.
>
> (6)　Every four (4) months the department shall electronically submit a progress report on each parole-eligible inmate's case plan to the Parole Board. The board may meet to review an inmate's case plan and may provide written input to the caseworker on the inmate's progress toward completion of the case plan.
>
> (7)　The Parole Board shall provide semiannually to the Oversight Task Force the number of parole hearings held, the number of prisoners released to parole without a hearing and the number of parolees released after a hearing.[12]

¶23.　This statute, according to Drankus, unambiguously provides that every parole-eligible offender is entitled to a case plan because the statute states that "the department shall develop

---

[12] Miss. Code Ann. § 47-7-3.1 (Rev. 2015).

a case plan for all parole eligible inmates." Viewed in isolation, this language supports Drankus's view. But, an apparent conflict between two related statutes—or in this case, between separate provisions of the same statute—results in ambiguity necessitating application of the rules of statutory construction.[13] One "well-settled" rule of statutory construction provides "that 'when two statutes pertain to the same subject, they must be read together in light of legislative intent.'"[14] "We have said that 'statutes on the same subject, although in apparent conflict, should if possible be construed in harmony with each other to give effect to each.'"[15]

¶24.    Here, the statute requires that "the department shall develop a case plan for all parole eligible inmates." But it then sets forth requirements for the content of that case plan, and some of these requirements cannot possibly be met for many parole-eligible inmates, Drankus included. For instance, "[w]ithin ninety (90) days of admission, the department shall complete a case plan on all inmates." Because Drankus was admitted more than ninety days before this law took effect, the Department could not comply with this temporal directive. Similarly, the statute requires the department to "ensure that the case plan is achievable prior to inmate's parole eligibility date." Because Drankus's parole-eligibility

---

[13] ***Tunica Cty. v. Hampton Co. Nat'l Sur., LLC***, 27 So. 3d 1128, 1133 (Miss. 2009).

[14] ***Tunica Cty.***, 27 So. 3d at 1133 (quoting ***Lenoir v. Madison Cty.***, 641 So. 2d 1124, 1129 (Miss. 1994)).

[15] ***Tunica Cty.***, 27 So. 3d at 1134 (quoting ***Miss. Gaming Comm'n v. Imperial Palace of Miss.***, 751 So. 2d 1025, 1029 (Miss. 1999)).

date arrived before the law took effect, the Department could not comply with this requirement either.

¶25. The statute cannot be completely satisfied if applied to Drankus, so I would find that the best interpretation of the statute's plain language, when read as a whole, is that "all parole eligible offenders" refers to all parole-eligible offenders to whom the statute can be applied completely. And while, for this reason, I concur in the result the majority reaches, I disagree that this case involves any question of retroactive application.

**KITCHENS, J., JOINS THIS OPINION IN PART**.

**KITCHENS, JUSTICE, DISSENTING:**

¶26. I agree with Presiding Justice Dickinson that the majority errs by applying a retroactivity analysis to the issue of whether the Probation and Parole Law entitles Drankus to a case plan. As Presiding Justice Dickinson explains, Drankus does not seek to apply the case plan statute, Mississippi Code Section 47-7-3.1, to a matter that occurred in the past. Rather, Drankus argues that, because he is a parole eligible inmate, Section 47-7-3.1 entitles him to a case plan right now. Therefore, the retroactivity analysis employed by the majority is inapposite to the issue at hand.[16] But I disagree with the conclusions of the majority and

---

[16] Another reason that the majority errs by applying a retroactivity analysis is that Section 47-7-43 of the Probation and Parole Law states that the entire chapter applies "with the same force and effect as if this chapter had been in operation at the time [the inmate] . . . [became] eligible to be placed [on parole]." Miss. Code Ann. § 47-7-43 (Rev. 2015). By enacting Section 47-7-43, the legislature plainly mandated that the Probation and Parole Law applies to parole-eligible inmates regardless of the date of conviction. In accordance with Section 47-7-43, when the legislature has intended for a certain portion of the Probation and Parole Law to apply to inmates convicted after a certain date, it has specified that date in the statute. *See* Miss. Code Ann. § 47-7-3 (Rev. 2015) (providing that certain classes of offenders are parole eligible based on dates of conviction); Miss. Code Ann. § 47-7-3.2 (Rev.

19

Presiding Justice Dickinson that Drankus is not entitled to a case plan. Because Section 47-7-3.1(1) manifests a clear legislative intent that "all parole eligible inmates" receive a case plan, this provision must be harmonized with conflicting portions of the statute. I would affirm the circuit court's decision that, as a parole eligible inmate, Drankus must receive a case plan.

¶27.    Section 47-7-3.1 provides that "the department shall develop a case plan for all parole eligible inmates to guide an inmate's rehabilitation while in the department's custody and to reduce the likelihood of recidivism after release." Miss. Code Ann. § 47-7-3.1(1) (Rev. 2015). Despite this clear language, the majority finds that the Mississippi Department of Corrections (MDOC) need not develop case plans for all parole-eligible inmates. The majority rests this conclusion upon Section 47-7-3.1(2), which provides that the MDOC must complete each case plan within ninety days of an inmate's admission, and Section 47-7-3.1(4), which provides that the case plan must be achievable before the inmate's parole eligibility date. Miss. Code Ann. § 47-7-3.1(2); Miss. Code Ann. § 47-7-3.1(4).

¶28.    When discerning the meaning of a statute, this Court's polestar consideration is legislative intent. *Miss. Gaming Comm'n v. Imperial Palace of Miss., Inc.*, 751 So. 2d 1025, 1028 (Miss. 1999). Thus, if a statute is ambiguous, we must give such a statute the interpretation that best effectuates its purpose. *Pegram v. Bailey*, 708 So. 2d 1307, 1314 (Miss. 1997). Our duty is to give a statute a reasonable construction that makes all its parts

2015) (prescribing parole eligibility requirements for offenders convicted after July 1, 2014). Although the legislature easily could have provided that only those offenders convicted after July 1, 2014, must receive a case plan, it did not do so.

harmonize with each other in a manner consistent with the statute's scope and object. ***Miss. Ins. Guar. Assoc. v. Gandy***, 289 So. 2d 677, 680 (Miss. 1973) (quoting ***Adams v. Yazoo & M.V.R. Co.***, 75 Miss. 275, 22. So. 824, 826 (1897)). Certainly, when faced with an ambiguous statute, this Court's practice has been to defer to the statutory interpretation adopted by the administrative agency charged with administering the statute. ***Miss. Methodist Hosp. & Rehab. Ctr., Inc. v. Miss. Div. of Medicaid***, 21 So. 3d 600, 606 (Miss. 2009). However, when the agency's interpretation is contrary to the best reading of the statute, no deference is due. ***Queen City Nursing Ctr., Inc. v. Miss. State Dep't of Health***, 80 So. 3d 73, 84 (Miss. 2011).

¶29.    I would find that the MDOC's interpretation of Section 47-7-3.1 is contrary to the best reading of the Probation and Parole Law and frustrates its purpose. Section 47-7-3.1 provides that "all parole eligible inmates" must receive a case plan. Subsection 47-7-3.1(2) and subsection 47-7-3.1(4) appear to conflict with that requirement by imposing time and content limitations upon case plans. Indeed, those subsections could apply only to those inmates whose initial parole dates are in the future. But, when read harmoniously with the requirement of Section 47-7-3.1 that all parole eligible inmates receive a case plan, the best reading of subsections 47-7-3.1(2) and (4) is that the legislature intended for the MDOC to develop its own time limitations and content requirements for those inmates whose initial parole dates are in the past. As the United States Supreme Court has recognized, lawmakers may leave "gaps" in statutory schemes to be filled by agency regulations. ***Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.***, 467 U.S. 837, 843, 104 S. Ct. 2778, 2782, 81 L. Ed. 2d

694 (1984) (holding that an administrative agency has the power to "fill any gap left, implicitly or explicitly, by Congress"). This reading harmonizes all provisions of the statute and ensures that all parole eligible inmates receive a case plan as so clearly provided by Section 47-7-3.1(1). Because the best reading of Section 47-7-3.1 entitles Drankus to a case plan, I would affirm the decision of the circuit court.

**KING, J., JOINS THIS OPINION.**